Argued and submitted November 13, 2019, argued at David Douglas High School, Portland; decision of Court of Appeals reversed, judgment of circuit court reversed, and case remanded to circuit court for further proceedings March 5, 2020

STATE OF OREGON,
*Respondent on Review,*

*v.*

TAMARA LOUISE FULMER,
*Petitioner on Review.*

(CC 16CR14039) (CA A162730) (SC S066654)

460 P3d 486

Defendant appeals from a judgment of conviction for unlawful possession of methamphetamine. Police officers determined, during a lawful traffic stop, that defendant's vehicle needed to be impounded. The officer asked defendant to step out of the vehicle and she did so, leaving her purse on the front passenger seat. At that time, defendant was free to leave and not under arrest. A second officer inventoried the contents of the vehicle, beginning with the purse, in which he discovered methamphetamine and needles. Defendant was charged with one count of possession of methamphetamine, ORS 475.894. Before trial, defendant filed a motion to suppress the evidence found in her purse and any derivative evidence, on the ground that the search of her purse as part of the inventory violated her rights under Article I, section 9, of the Oregon Constitution. The trial court denied her motion and defendant was convicted. On appeal, defendant argued that the officers were constitutionally required to ask her if she wanted to remove any personal items from the vehicle before the inventory began. The Court of Appeals affirmed, holding that the inventory search was valid. *Held*: An inventory of a vehicle conducted without notice to the occupant who is present that he or she may remove readily retrievable items violates Article I, section 9.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

En Banc

On review from the Court of Appeals.*

Brett J. Allin, Deputy Public Defender, Salem, argued the cause and filed the briefs for petitioner on review. Also on the briefs was Ernest G. Lannet, Chief Deputy Defender, Office of Public Defense Services.

_____

* Appeal from Washington County Circuit Court, Oscar Garcia, Judge. 296 Or App 61, 437 P3d 257 (2019).

Rebecca M. Auten, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

BALMER, J.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

**BALMER, J.**

At issue in this case is evidence discovered in a purse during an inventory of an impounded vehicle. Hillsboro Police Department policy requires an officer who has taken "constructive custody of a vehicle prior to impoundment" to inventory, among other things, "all personal property and the contents of open containers found" in the passenger compartment. The inventory policy does not permit the opening of "closed containers," but expressly excludes from the definition of "closed containers" items "designed for carrying money or small valuables *** includ[ing], but *** not limited to, closed purses, closed coin purses, closed wallets and closed waist packs." The policy did not contain any provisions directing officers to advise occupants that they may take personal items or prohibiting them from doing so. Nor did it contain any provision prohibiting or forbidding occupants from removing personal items from the vehicle prior to inventory. Defendant moved to suppress the evidence found in the purse, arguing that the search violated her right under Article I, section 9, of the Oregon Constitution to be free from unreasonable searches and seizures. The trial court concluded, however, that the search was conducted pursuant to a valid inventory policy and therefore was permitted under *State v. Atkinson*, 298 Or 1, 688 P2d 832 (1984). A divided panel of the Court of Appeals affirmed, *State v. Fulmer*, 296 Or App 61, 437 P3d 257 (2019), and we allowed defendant's petition for review. For the reasons set out below, we reverse.

A Hillsboro police officer observed defendant driving a vehicle with expired registration tags. The officer initiated a stop, and defendant pulled over. The officer approached defendant and informed her of the reason for the stop. Defendant admitted not only that her registration tags were expired, but also that her driver's license had expired and that she did not have insurance. The officer returned to the patrol vehicle, confirmed the information that defendant had given, and began writing a citation. The officer determined that defendant's vehicle would need to be towed and impounded, as defendant could not legally drive it without a license or insurance, and it was blocking a bicycle lane. The officer called a second officer to assist.

The first officer was still writing the citation when the second officer arrived. The officers re-approached the vehicle, one on each side. The first officer told defendant that he was impounding her vehicle because her license was suspended, she had no insurance, and the vehicle posed a hazard in its current location. That officer informed defendant that he would need to do an inventory of her vehicle and told her to step out of the vehicle so the second officer could begin that process.

Defendant exited the vehicle with her cell phone and a pack of cigarettes in her hand, but her purse remained on the passenger's seat. Defendant neither asked to nor was told that she could remove additional items from the car. She stood near the patrol vehicle while the inventory took place. The second officer began the inventory by looking in defendant's purse. In a wallet inside defendant's purse, the officer found used syringes and a small amount of methamphetamine.

Defendant was charged with unlawful possession of methamphetamine. She moved to suppress the evidence found in her purse, arguing that the officers had unlawfully searched her purse. She acknowledged that, in *Atkinson*, this court had recognized an inventory exception to the warrant requirement, but she asserted that the exception did not apply because the officers had not told her that she could remove her purse from her car. The trial court denied defendant's motion to suppress, determining that "the inventory search was valid and it was lawfully followed through [the] policy that's been implemented by the City of Hillsboro." The trial court also determined that the officers were not required to ask defendant if she wanted to take her purse with her before conducting the inventory.

Defendant appealed, assigning error to the trial court's denial of her motion to suppress. Defendant argued first that the officers unconstitutionally seized her purse when they ordered her out of the vehicle and informed her that her vehicle would be inventoried, because a reasonable person in her situation would have believed that she was not free to remove her personal items from the vehicle at that time, and the administrative seizure exception did not

justify that seizure. Defendant also argued that the search of her purse as part of the inventory violated Article I, section 9, because the police failed to inform her that she could remove personal items from her car. Specifically, defendant argued that the purposes underlying the inventory exception that this court articulated in *Atkinson*, 298 Or 1—protection of personal property, avoidance of spurious claims of lost property, and officer safety—are best served by encouraging occupants of impounded vehicles to remove personal property before the inventory takes place. Absent such an opportunity to remove personal property from the vehicle, defendant argued, the seizure of that property did not come within the inventory exception and therefore was invalid. The state responded that providing such information is not required by the constitution.

In affirming, the Court of Appeals majority noted that defendant did not dispute the lawfulness of the traffic stop, the decision to impound her vehicle, the Hillsboro Police Department's inventory policy, or that the officers complied with the policy. *Fulmer*, 296 Or App at 65-66. The court concluded that Article I, section 9, did not require police "to give an advice-of-rights regarding inventory searches" and that the lack of such an advisement on its own was insufficient to compel the conclusion that a reasonable person would believe that she could not remove personal items from a vehicle. *Id.* at 74-75. A policy requiring such advice, the court reasoned, would be consistent with the purposes of the inventory search exception described in *Atkinson*, but it is not required by *Atkinson* or by Article I, section 9. *Fulmer*, 296 Or App at 75.

On defendant's alternative seizure argument, the Court of Appeals acknowledged that "[t]he moment when an officer informs a person who is not under arrest that a vehicle is going to be impounded and asks, directs, or otherwise causes the person to exit the vehicle has not been the subject of much case law." *Id.* at 73. The court stated that it generally agreed "with defendant that, in that moment, an officer *could* engage in conduct that would unlawfully interfere with the person's right to remove personal belongings from the vehicle, so as to constitute a seizure of those items distinct from the administrative seizure of the vehicle." *Id.*

(emphasis in original). The Court of Appeals ultimately concluded, however, that such an interference did not occur in this case, based on the trial court's express and implied findings. *Id.*

Chief Judge Egan dissented, arguing that the majority had read *Atkinson* incorrectly—that, while *Atkinson* lays out three conditions necessary for an inventory policy to satisfy constitutional requirements, those three conditions are not sufficient to make an inventory policy constitutional. *Id.* at 78 (Egan, C. J., dissenting). The courts have a responsibility, the dissent reasoned, to "assur[e] that 'inventory searches' do not become licenses for police to conduct warrantless investigatory searches." *Id.* The dissent would have adopted defendant's rule that, "[b]ecause it is reasonable for an individual to feel inclined or obliged to cooperate with police, \*\*\* police always must advise individuals of their right to take property with them prior to an inventory of their vehicle." *Id.* at 80.

Defendant renews her arguments in this court. Defendant first argues that, because the officers did not inform her that she could remove personal items from her vehicle, the state cannot rely on the inventory search exception to the warrant requirement articulated in *Atkinson*. Because we generally agree with defendant on that point, we do not address her alternative argument that her purse was seized when the officers ordered her out of her vehicle and informed her that they were impounding the vehicle and would inventory its contents.

We begin our discussion with an overview of the warrant requirement under the Oregon Constitution and the inventory search exception to that requirement. As a threshold matter, "Article I, section 9, of the Oregon Constitution establishes a right of the people 'to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure.'" *State v. Rodgers/Kirkeby*, 347 Or 610, 621, 227 P3d 695 (2010) (quoting Or Const, Art I, § 9). Under Oregon law, a seizure occurs when an officer significantly interferes with a person's possessory or ownership interest in property. *State v. Juarez-Godinez*, 326 Or 1, 6, 942 P2d 772 (1997). A search is an invasion of a privacy—rather than

a possessory—interest. *State v. Meredith*, 337 Or 299, 303, 96 P3d 342 (2004).

It is well established that a search or seizure conducted without a warrant is *per se* unreasonable, unless that search or seizure falls within one of the "specifically established and well delineated exceptions" to the warrant requirement. *State v. Nagel*, 320 Or 24, 36, 880 P2d 451 (1994) (citation omitted). In the absence of a warrant, the state bears the burden of establishing that the search or seizure falls under one of those exceptions. *State v. Walker*, 350 Or 540, 553, 258 P3d 1228 (2011). Evidence obtained in the absence of a warrant and that does not fall under any exception is suppressed in order "to preserve that person's rights to the same extent as if the government's officers had stayed within the law." *State v. Davis*, 295 Or 227, 234, 666 P2d 802 (1983). One "well delineated exception" to the warrant requirement on which the state may rely is the court-created inventory exception to the Fourth Amendment's general prohibition on unreasonable searches and seizures that was recognized by the United States Supreme Court in *South Dakota v. Opperman*, 428 US 364, 96 S Ct 3092, 49 L Ed 2d 1000 (1976), and addressed by this court in *Atkinson*, 298 Or 1. The Supreme Court in *Opperman* defined the inventory exception as follows: "The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience[,] *** generally follow[ing] a routine practice of securing and inventorying the automobiles' contents." 428 US at 369. There, the Court held that "inventories pursuant to standard police procedures are reasonable." 428 US at 372.

In *Atkinson*, we considered whether police were permitted to conduct an inventory of a vehicle that had been abandoned by the side of the road, where, over the course of several hours, multiple "unsuccessful efforts were made to contact the car's owner to retrieve the vehicle prior to having it towed away." 298 Or at 3. Citing *Opperman* and other federal cases, the court stated that "a policy may be adopted and uniformly administered to inventory the contents of ordinary vehicles in order to protect private property and for ancillary purposes." *Id.* at 7. The court went on to describe

the "[t]hree principal purposes often \* \* \* put forward to justify a governmental policy of inventorying impounded personal property"—protecting the owner's property while that property is in police custody, reducing and tending to prevent the assertion of false claims against police, and officer safety concerns. *Id.* at 7-8. The court concluded, based on those three policy concerns, that, for an inventory to be valid, the vehicle must be "in lawful administrative custody \* \* \* [and the] inventory must be conducted pursuant to a properly authorized administrative program, designed and systematically administered so that the inventory involves no exercise of discretion by the law enforcement person directing or taking the inventory." *Id.* at 10.[1] Those three requirements were correctly summarized by the Court of Appeals: "(1) the vehicle is lawfully in police custody, (2) the inventory policy is properly authorized and designed and systematically administered so that the inventory involves no exercise of discretion by police, and (3) the officer directing or taking the inventory does not deviate from the established policies or procedures." *Fulmer*, 296 Or App at 68 (internal quotation marks omitted).

This court in *Atkinson*, however, did not hold that compliance with those requirements would mean that a search conducted pursuant to a valid inventory policy always would be constitutional. Rather, the court took care to note that compliance meant only that "such a policy is not inherently 'unreasonable.'" 298 Or at 8. For that reason, *Atkinson* can be read as setting out the minimum standards to which law enforcement must adhere when relying on the inventory exception to the warrant requirement, but leaving open the possibility that a policy that complies with those minimum standards may, in circumstances other than those present in *Atkinson*, yield results that may not pass constitutional muster. And, significantly, the court in *Atkinson* was not presented with the question of the reasonableness of an inventory search when the vehicle occupant is present and not under arrest.

---

[1] This court in *Atkinson* stated that it could not determine from the record whether the inventory there was conducted pursuant to and consistent with such a properly authorized program, so the court remanded the case to the trial court for further proceedings. 298 Or at 11-12.

The same day that this court decided *Atkinson*, it also decided *State v. Perry*, 298 Or 21, 688 P2d 827 (1984), in which it emphasized the narrow permissible scope of an inventory search in noncriminal or nonemergency situations, compared to a search based on probable cause or reasonable suspicion developed in a criminal investigation. The court stated that "the inventory process in noncriminal, nonemergency cases should be less intrusive than that considered reasonable in criminal cases," *id.* at 27, and that "a person is entitled to a greater expectation of privacy in a civil hold situation than" in a criminal case, *id.* at 28. In *Perry*, the defendant was found intoxicated at a bus station with two suitcases. *Id.* at 23. He was taken to the police station to be held for detoxification, where the police opened both of his suitcases and found marijuana. *Id.* at 24. Similar to the facts here, the state in *Perry* did not claim that the police had probable cause or reasonable suspicion to search the suitcases, but, rather, that an inventory search was necessary to ensure that any valuables were adequately protected. *Id.* The court in *Perry* concluded that the inventory was invalid because permitting officers to inventory the suitcase of a person being held for detoxification—a noninvestigative, noncriminal setting—would afford the intoxicated person fewer rights than those afforded to a person found in possession of drugs and, therefore, exceed the scope of the purpose of the inventory exception. *Id.* at 28.

Since *Atkinson* and *Perry*, this court has revisited the contours of the inventory search exception several times, examining the purposes of the exception and its application to ensure consistency with those purposes. In *State v. Lippert*, 317 Or 397, 856 P2d 634 (1993), the court relied on *Perry* in concluding that the principles articulated there did not apply where the intoxicated defendant challenged evidence found in his pocket, but reaffirmed that "[t]he result would be different if the item searched were not a pocket but instead were something that the person to be detoxified was not going to take into the secure facility," such as a suitcase, as in *Perry*. *Lippert*, 317 Or at 405 n 6. In *State v. Boone*, 327 Or 307, 314, 959 P2d 76 (1998), the court held that a local policy implicitly conferred the authority to conduct an inventory search where the policy expressly authorized

the impoundment of a vehicle and that that implied authorization satisfied the requirements of *Atkinson*. The court acknowledged, however, that *Atkinson* expressly provided that "[o]bjects found within the inventoried vehicle should be scrutinized only to the extent necessary to complete the inventory." *Boone*, 327 Or at 314 (internal quotation marks omitted). And in *State v. Connally*, the court again stated that "[t]he purpose of the inventory is not to discover evidence of a crime," but rather to serve civil and administrative ends. 339 Or 583, 587, 125 P3d 1254 (2005). The court emphasized that the scope of the inventory depends on what "is necessary to serve the inventory's purposes." *Id.*

Read together, *Atkinson* and its progeny stand for the proposition that the inventory exception to the warrant requirement applies only when its use serves the administrative purposes that justify the exception and is consistent with the rights protected by Article I, section 9. This court has similarly held that other exceptions to the warrant requirement may not be used in ways that reach beyond the purposes of the particular exception. *See, e.g.*, *State v. Ghim*, 360 Or 425, 439, 381 P3d 789 (2016) (noting that "[t]his court has long recognized that [a statutorily authorized] administrative subpoena * * * will comply with Article I, section 9, as long as the subpoena is * * * *no broader than the needs of the particular investigation*" (internal citations omitted; emphasis added)). And in *State v. Arreola-Botello*, we recently explored the limits on permissible police activity in the context of a noncriminal traffic stop. 365 Or 695, 451 P3d 939 (2019). We emphasized that exceptions to the warrant requirement under Article I, section 9, "are limited in scope and duration," *id.* at 709, and that, during a noncriminal traffic stop, "an officer is limited to investigatory inquiries that are reasonably related to the purpose of the traffic stop." *Id.* at 712. We then held that police authority to stop a citizen in those circumstances "is founded on the assumption that temporary, investigative stops to investigate particular conduct are permitted for that particular purpose only." *Id.* at 710.

In sum, the exceptions to the warrant requirement—including the inventory exception—must be applied

consistently with the purposes animating the exception. Put differently, the contours and scope of the particular exception are circumscribed by the justification for that exception. As we said in *Arreola-Botello*, "it is the justification for the stop that delineates the lawful bounds of the traffic stop." 365 Or at 710 (internal quotations and citation omitted).

We turn, then, to the question whether the use of the inventory exception to the warrant requirement here was within the lawful bounds that have been delineated by our earlier decisions as the justification for that exception. Because the inventory exception cannot exceed the scope of the purpose for that exception, we consider whether the governmental purposes justifying inventories as outlined in *Atkinson* are furthered when officers do not give occupants who are present and not under arrest notice that they may retrieve readily removable personal belongings before an inventory is conducted.

As discussed, we have considered inventory searches in circumstances where the defendant was unavailable to remove personal items from the vehicle. *See Atkinson*, 298 Or 1 (vehicle abandoned and multiple unsuccessful attempts made to contact owner); *Perry*, 298 Or 21 (defendant intoxicated); *Lippert*, 317 Or 397 (same); *Connally*, 339 Or 583 (defendant under arrest). But we have not previously addressed the circumstances here, where the vehicle occupant's belongings were searched in front of her when she was present and competent to provide for an alternative disposition of her property.

And that difference is the crux of defendant's constitutional argument. She asserts that exceptions to the warrant requirement of Article I, section 9, are limited by the purposes that justify the exception in the first place. And, she continues, the admission of evidence discovered in a noncriminal, noninvestigative inventory search, when the owner of the property is present and able to retrieve the property—but is never notified that he or she may do so—exceeds the permissible scope of the exception. Defendant emphasizes that two of the three purposes of the inventory exception identified in *Atkinson*—safeguarding property and protecting against false claims of theft by property

owners—are not advanced at all by permitting such a search.[2]

We agree with defendant. As this court stated in *Atkinson*, the first two of the three "principal purposes" justifying the court-created inventory exception to the warrant requirement are to "protect the owner's property while in police custody" and to "reduce and tend to prevent the assertion of false claims against police." *Atkinson*, 298 Or at 7. Courts in other jurisdictions have pointed out that, if the justification for an inventory is protection of a person's property and reduction of false claims, those aims are likely better served by ensuring that as little property as possible makes its way into police custody. *See, e.g.*, *Opperman*, 428 US at 375 (noting specifically that "[t]he owner, having left his car illegally parked for an extended period, *** was not present to make other arrangements for the safekeeping of his belongings"); *State v. Mangold*, 82 NJ 575, 586, 414 A2d 1312, 1317 (1980) ("If in fact the principle [*sic*] justifications for an inventory are to protect the property in the vehicle and to shield the authorities from false claims relating to those items, it would seem only reasonable to consult with the owner *** when he is present ***.").[3]

Given the purposes of the inventory exception as described in *Atkinson* and this court's holdings that the

---

[2] The third purpose identified in *Atkinson* for recognizing an inventory exception to the warrant requirement is that "some danger to police and others arises from the impoundment of uninventoried property." 298 Or at 7. However, the court then stated unequivocally that "[r]eliance on this reason must have a concrete basis in specific circumstances; it may not simply be assumed as a basis of a general precautionary practice." *Id.* at 8. The state asserts no specific circumstances here that would justify the inventory on the basis of safety concerns.

[3] Some cases, while not identifying that rationale for requiring occupant consent or notice regarding retrieval of personal items before an inventory search, have nevertheless viewed such consent or notice as preferable, if not constitutionally required. *See State v. White*, 135 Wash 2d 761, 771 n 11, 958 P2d 982, 987 (1998) (under Washington law, "police may not conduct a routine inventory search following the lawful impoundment of a vehicle without asking the owner, if present, if he or she will consent to the search"); *People v. Counterman*, 192 Colo 152, 157, 556 P2d 481, 485 (1976) (noting that one factor that courts have considered in determining the reasonableness of an inventory search is "[t]he presence of a less intrusive alternative, such as the waiver by the owner of the security provided by an inventory search"); *see generally State v. Ingram*, 914 NW 2d 794, 820 (Iowa 2018) (reviewing state inventory search decisions and holding that, under Iowa law, "law enforcement should ask the driver whether there is any property in the vehicle the driver wishes to retain").

scope of an exception to the warrant requirement is limited by the purposes for that exception, we conclude that an inventory conducted without notice to the occupant who is present that she may remove readily retrievable items violates Article I, section 9.[4]

The state does not disagree that defendant's Article I, section 9, rights were at issue here or that notifying occupants, before an inventory, that they may remove personal items from a vehicle might be a preferable policy. Nevertheless, the state argues against the notification requirement for which defendant advocates, contending that "even a seemingly straightforward rule that an officer must advise an individual that she may take her belongings before the inventory would create confusion for officers in the field," which would circumvent *Atkinson*'s aim of removing police discretion from inventory searches and impose a practical burden on law enforcement. The state claims that adoption of defendant's position would render the inventory exception of minimal utility, turning virtually every application of the exception into a "*post hoc* totality-of-the-circumstances" inquiry.

The state's concern appears to be overblown. As discussed above, a number of states have held that officers must notify the occupant of a vehicle that he or she may retrieve personal belongings before an inventory is conducted, and nothing has been brought to our attention suggesting that the appropriate use of inventories in those jurisdictions has been hindered. Defendant also points to two Oregon Court of Appeals cases involving local inventory policies that require advising citizens about private property before property is impounded and inventoried. *See State v. Williams*, 227 Or App 453, 455-56, 206 P3d 269 (2009) (describing

---

[4] We emphasize that our holding regarding the application of the inventory exception to the warrant requirement does not preclude officers from relying on other well-established exceptions that may apply in specific circumstances. *See State v. Bliss*, 363 Or 426, 438, 423 P3d 53 (2018) (automobile exception); *State v. Bates*, 304 Or 519, 524, 747 P2d 991 (1987) (officer safety exception); *State v. Anfield*, 313 Or 554, 561, 836 P2d 1337 (1992) (search incident to arrest). Neither does our decision preclude officers from making an arrest based on items in plain view. *See State v. Heckathorne*, 347 Or 474, 483, 223 P3d 1034 (2009) (noting that no warrant is required for the seizure of items in plain view because no privacy interest exists for items in plain view).

circumstances where officers had been required by local policy to permit a vehicle occupant to remove items from the car); *State v. Bernabo*, 224 Or App 379, 381-82, 197 P3d 610 (2008) (excluding evidence discovered during an inventory search where officers had advised defendant of his right to remove items from the vehicle prior to the towing of the vehicle, but after already searching the vehicle, contrary to local policy).[5] Those policies indicate, at the very least, that several Oregon jurisdictions have already determined that a useful inventory policy can be adopted that includes a notification requirement.

Defendant does not ask us to reconsider the inventory exception set out in *Atkinson*, and we have not done so. Rather, we have considered how that established and "well delineated" exception to the warrant requirement should be applied—without exceeding the scope of that exception—when the occupant of a vehicle about to be impounded and inventoried is present, not under arrest, and competent. We have concluded that the failure to give an occupant in those circumstances notice that he or she may retrieve personal items from the vehicle causes the scope of the inventory to exceed the purposes that justify the exception. Moreover, we see no insurmountable barriers to the implementation of such a requirement. It is certainly true that issues will arise involving the application of inventory policies in different settings and that questions will arise about whether particular inventory policies or inventories do or do not violate Article I, section 9, but that will always be the case.

In sum, we conclude that the application of the inventory exception in this case violated defendant's rights under Article I, section 9. The trial court therefore erred in

_____

[5] City of Prineville Ordinance No. 1109 requires that "[t]he owner or operator of the vehicle [to be impounded] shall be asked to remove, if possible, all valuables from the vehicle prior to impoundment. If such items cannot be removed, they shall be inventoried before the vehicle is removed, and the owner or operator shall be requested to verify the completeness of that portion of the inventory by signature." *See Williams*, 227 Or App at 456. Deschutes County Policy Number 5.14 contains a virtually identical provision. *See Bernabo*, 224 Or App at 384. Cases involving the Deschutes and Prineville ordinances have been the subject of several Court of Appeals cases. Nothing in those decisions suggests that the requirement imposes any particular difficulty on law enforcement.

denying her pretrial motion to suppress, and the resulting judgment of conviction must be reversed.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.