Argued and submitted April 30, 2019, North Salem High School, Salem; affirmed August 19, 2020

STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

JACOB ZAVALA KRUMENAKER,
aka Jacob Krumenaker,
*Defendant-Respondent.*

Tillamook County Circuit Court
17CR56442; A166647

472 P3d 760

The state appeals from an interlocutory order of the trial court that suppressed evidence discovered during an inventory search of defendant's car. The trial court suppressed the evidence based on its determination that the inventory policy was being administered by the police in a manner that gave too much discretion to the searching officer, in contravention of Article I, section 9, of the Oregon Constitution, as interpreted in *State v. Atkinson*, 298 Or 1, 688 P2d 832 (1984). On appeal, the state argues that the court misapplied *Atkinson* and that the inventory was constitutionally valid. *Held*: The trial court did not err in its application of *Atkinson*, and the state did not meet its burden to show that the inventory policy was systematically administered to remove individual officer discretion, which is required under *Atkinson* for a search pursuant to an inventory policy to be valid under Article I, section 9.

Affirmed.

Mari Garric Trevino, Judge.

Peenesh Shah, Assistant Attorney General, argued the cause for appellant. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Joshua B. Crowther, Deputy Public Defender, argued the cause for respondent. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Before Ortega, Presiding Judge, and Tookey, Judge, and Powers, Judge.

ORTEGA, P. J.

Affirmed.

**ORTEGA, P. J.**

The state appeals from an interlocutory order of the trial court that suppressed evidence discovered during an inventory search of defendant's car. The trial court suppressed the evidence based on its determination that the inventory policy was being administered by the police in a manner that gave too much discretion to the searching officer, in contravention of Article I, section 9, of the Oregon Constitution, as interpreted in *State v. Atkinson*, 298 Or 1, 688 P2d 832 (1984). On appeal, the state argues that the court misapplied *Atkinson* and that the inventory was constitutionally valid. We conclude that the trial court did not err in its application of *Atkinson* and that the state did not meet its burden to show that the inventory policy was systematically administered to remove individual officer discretion, which is required under *Atkinson* for a search pursuant to an inventory policy to be valid under Article I, section 9. Accordingly, we affirm.

The underlying facts are undisputed. Officer Greiner stopped defendant for having expired registration stickers displayed on his car. During the stop, defendant admitted that the car was not insured. As a result, Greiner determined that the car should be impounded, at which point defendant left the area on foot. Greiner then conducted an inventory of the car. He found a backpack behind the driver's seat, which he opened. Inside one of the compartments in the backpack was a brown, zippered, soft-sided, oblong case that Greiner identified as a "brown pistol case." Greiner testified that "by feeling it," he "could tell that there was a pistol inside." He also testified that "guns are valuable" and that "from my life experience, training, experience, *** it's a container that contains valuables." Greiner opened the case and found a firearm inside. Defendant was subsequently charged with felon in possession of a firearm.

Defendant moved to suppress Greiner's discovery of the firearm, arguing that it was discovered pursuant to an invalid inventory. At the suppression hearing, the state introduced evidence of the written policies of the City of Tillamook and the Tillamook Police Department with regard to the inventory of impounded vehicles. The Police

Chief of the Tillamook Police Department and Greiner also testified at the hearing regarding those policies. We proceed to summarize that evidence.

The Code of the City of Tillamook (CCT) requires impounded vehicles to be inventoried:

"A vehicle that has been impounded, seized as evidence in a criminal investigation or seized for forfeiture by the City Police Department, shall be inventoried for condition and property contents to identify damage and to list all valuables in the vehicle to avoid civil liability. The search and inventory shall be conducted pursuant to current City Police Department policies and procedures."

CCT 72.060(D). The Tillamook Police Department Policy Manual includes procedures for inventorying an impounded vehicle. That policy provides, in part:

"The contents of all impounded vehicles shall be inventoried in accordance with the following procedure:

"(a)  An inventory of personal property and the contents of open containers will be conducted throughout the passenger and engine compartments of the vehicle ***.

"*****

"(c)  Closed containers located either within the vehicle or any of the vehicle's compartments will not be opened for inventory purposes except for the following, which shall be opened for inventory: wallets, purses, coin purses, fanny packs, personal organizers, briefcases or other closed containers designed for carrying money or small valuables, or closed containers which are designed for hazardous materials.

"(d)  Other closed containers shall be opened and inventoried if the owner acknowledges they contain cash in excess of $10, valuables or a hazardous material.

"(e)  Any valuables, to include cash in excess of $10 or property valued at more than $200, located during the inventory process will be listed ***.

"*****

"These inventory procedures are for the purpose of protecting an owner's property while in police custody, to provide for the safety of officers, and to protect the Department

against fraudulent claims of lost, stolen, or damaged property."

The City of Tillamook adopted the above police department policy by resolution, with the exception of the final paragraph, which sets forth the purpose of the inventory policy. In addition, the city adopted an addendum to the policy, which provides:

"When property is obtained or seized by the Police Department, as evidence, found property or safe keeping, all property shall be completely inventoried to preclude claims of loss, damage or theft. Officer(s) conducting the inventory shall always follow procedures as set forth by the Tillamook Police Department Policy Manual, to include Chapters 5 and 8, relating to property. Property seized or obtained shall always be inventoried.

"As part of the inventory process, the opening of closed containers intended primarily to store or carry valuables, such as purses, wallets, fanny packs, or back packs is authorized. (State v. Bean, 150 Or App 223, 946 P2d 292 (1997)[)]. This information shall be documented on the property form and if applicable, the vehicle impound form."

At the suppression hearing, when asked about imple-mentation of the inventory policy on opening closed containers, the police chief testified that whether, under the policy, an officer would open a tackle box or suitcase "depends on the circumstances" and "depends on if it announces its contents." The police chief also testified that whether an officer would open a duffel bag "depends on the circumstance," not unlike how an officer determines whether to shoot someone who has a gun. He also testified that he would open small, zippered bags for inventory, and that his department has opened for inventory not only the small, day-pack style of backpack but also large backpacks.

In addition to the facts specific to this case set out above, Greiner testified more generally about inventories. He testified that the purpose of the inventory is to document things of value to guard against false claims. With regard to closed containers, he looks for anything that "would possibly contain valuables," which would include backpacks. He also testified that, with an inventory, he has opened a tackle box, and whether he would open a suitcase "depends on the

situation," if he "thought it contained valuables." He has also opened small boxes and a duffel bag to inventory.

Defendant argued that the inventory conducted here was not valid both because the policy and its implementation impermissibly allowed officer discretion in how to conduct the inventory and because Greiner deviated from the policy in this case. Defendant pointed out that both the police chief and Greiner testified to opening closed containers pursuant to the inventory policy, such as tackle boxes, duffel bags, and suitcases, that are not permitted to be opened to look for valuables, based on existing case law, because those are not containers designed to store valuables.

The trial court issued a letter opinion, granting defendant's motion to suppress. Following the test for evaluating inventories, as set out in *Atkinson*,[1] the court found and concluded as follows:

> "The Court begins by noting that the defense has not contested the fact that the vehicle was lawfully impounded. The first question is therefore whether or not Officer Greiner followed the policy. This turns on the question of whether or not the backpack was a 'closed container designed for carrying money or small valuables.' The Court finds that it was for a number of reasons. First, it is one of the items specifically enumerated in the City's policy. Second, it is objectively likely that the small backpack pictured in State's Exhibit 7 contained valuables. Inside the backpack was an additional soft leather pistol case that the officer could tell contained a gun when he removed it from the backpack. Officer Greiner testified that a gun is a 'valuable' and he opened the case. Although there is no case law on this point, the Court agrees. Obviously a gun is a weapon and the Tillamook City policy does not specifically mention opening containers containing weapons. However, a gun is also a valuable to be inventoried at least under the circumstances of this case.

---

[1] The three requirements in *Atkinson* for a lawful inventory can be summarized as follows: "(1) the vehicle is lawfully in police custody, (2) the inventory policy is properly authorized and designed and systematically administered so that the inventory involves no exercise of discretion by police, and (3) the officer directing or taking the inventory does not deviate from the established policies or procedures." *State v. Fulmer*, 366 Or 224, 231, 460 P3d 486 (2020) (internal quotation marks omitted).

"The next question is whether the inventory was conducted 'pursuant to a properly authorized administrative program, designed and systematically administered so that the inventory involves no exercise of discretion by the law enforcement person directing or taking the inventory.' The defense does not contest that the City of Tillamook lawfully authorized the inventory policy and program contained in Exhibits 1, 2, and 3. That leads to the question of whether or not the program is 'systematically administered so that the inventory involves no exercise of discretion by the law enforcement person directing or taking the inventory.' This question is the major issue in this case and the Court could not find any case law on this point. The testimony at the hearing from both Chief Wright and Officer Greiner is that in other cases as part of inventories under the City of Tillamook's inventory program they have searched duffel bags, fishing tackle boxes, suitcases and large backpacks, depending on the particular circumstances of the individual case. This testimony while it makes perfect sense in a practical world, is a text book definition of discretion. Thus, the evidence before the Court is that while the inventory policy does not allow for discretion, both the chief of police and the officer involved in this case are regularly exercising discretion when deciding which items to search as part of the inventory. Therefore the Court must answer 'no' to the question of whether or not the City of Tillamook's inventory policy is being systematically administered to eliminate officer discretion."

The state appeals from the trial court's order suppressing the gun.

We review the trial court's determination on the validity of the inventory for errors of law, "taking as binding the trial court's findings of historical facts if there is evidence in the record to support them." *State v. Bernabo*, 224 Or App 379, 383, 197 P3d 610 (2008).

Under Article I, section 9, "a search or seizure conducted without a warrant is *per se* unreasonable, unless that search or seizure falls within one of the 'specifically established and well delineated exceptions' to the warrant requirement." *State v. Fulmer*, 366 Or 224, 230, 460 P3d 486 (2020) (quoting *State v. Nagel*, 320 Or 24, 36, 880 P2d 451 (1994)). One "well delineated exception" that the state may

rely on is the court-created inventory exception, as explained in *Atkinson*. *Id.* "The burden is on the state to prove the lawfulness of the inventory." *Bernabo*, 224 Or App at 383.

In *Atkinson*, the Supreme Court set out the requirements for a valid inventory. First, the court set out the three primary purposes used "to justify a government policy of inventorying impounded personal property": (1) "inventories protect the owner's property while in police custody"; (2) "inventories reduce and tend to prevent the assertion of false claims against police"; and (3) "in an age of increasing violence, some danger to police and others arises from the impoundment of uninventoried property." *Atkinson*, 298 Or at 7 (citing *United States v. Mitchell*, 458 F2d 960, 961 (9th Cir 1972), *United States v. Kelehar*, 470 F2d 176, 178 (5th Cir 1972), and *Cardenas v. Pitchess*, 506 F2d 1224 (9th Cir 1974)). Reliance on the third justification, however, "must have a concrete basis in specific circumstances; it may not simply be assumed as a basis of general precautionary practice." *Id.* at 8.

The court then explained that, "[i]f the responsible policy makers decide that protective reasons of this nature justify prescribed procedures for inventorying the contents of an impounded vehicle, such a policy is not inherently 'unreasonable' within the meaning of Article I, section 9, if it complies with the following conditions[.]" *Id.* Those conditions are that (1) "[t]he vehicle must be lawfully impounded," *id.*, and (2) "any inventory must be conducted pursuant to a properly authorized administrative program, designed and systematically administered so that the inventory involves no exercise of discretion by the law enforcement person directing or taking the inventory," *id.* at 10. As part of the second requirement, the court further explained:

> "If the evidence shows that the inventory deviated from the established policy or procedures of the particular law enforcement agency, the inventory should be deemed invalid. The scope of the inventory must be limited to that—an inventory. Objects found within the inventoried vehicle should be scrutinized only to the extent necessary to complete the inventory."

*Id.* As a result, the Oregon Supreme Court has summarized *Atkinson* as having three requirements with respect to an

inventory of the contents of an impounded vehicle: "(1) the vehicle is lawfully in police custody, (2) the inventory policy is properly authorized and designed and systematically administered so that the inventory involves no exercise of discretion by police, and (3) the officer directing or taking the inventory does not deviate from the established policies or procedures." *Fulmer*, 366 Or at 231 (internal quotation marks omitted).

The court emphasized that the *Atkinson* requirements for a valid inventory are informed by the searching agency's justification for the inventory: "Read together, *Atkinson* and its progeny stand for the proposition that the inventory exception to the warrant requirement applies only when its use serves the administrative purposes that justify the exception and is consistent with the rights protected by Article I, section 9." *Fulmer*, 366 Or at 233. Thus, the court stated that "the contours and scope of the [inventory] exception are circumscribed by the justification for that exception." *Id.* at 234; *see also State v. Willhite*, 110 Or App 567, 572, 824 P2d 419 (1992) ("Politically accountable officials must decide as a matter of policy when, how and for what purposes private property in official custody should be examined. \*\*\* For a policy to be properly authorized, it must require a procedure that is rationally related to legitimate governmental interests. Therefore, the justifications offered for the policy have to be considered in determining the validity of the policy and the lawfulness of its execution.").

With that background in place, we turn to the arguments of the parties on appeal. The state argues that the trial court erred in this case, because the Tillamook inventory policy does not leave officers with too much discretion. The state argues that an officer exercising evaluative judgment to determine what constitutes a closed container that holds a valuable or what is a valuable to comply with an inventory policy does not make the policy invalid, citing *State v. Cleland*, 289 Or App 379, 410 P3d 386 (2017), *rev den*, 362 Or 699 (2018), and *State v. Stone*, 232 Or App 358, 222 P3d 714 (2009), *rev den*, 349 Or 654 (2011). The state argues that the fact that officers may have exceeded the bounds of the Tillamook policy in other cases, by opening certain types of containers, as found by the trial court, does not mean that

the officers hold excess discretion to act under the policy. In that regard, the state asserts that the trial court misunderstood the "systematically administered" part of the inventory test, set out in *Atkinson*. The state argues that the test is not whether officers may have failed to comply with the policy in particular instances but whether the policy is mandatorily applied in all cases—that is, the state argues that the "systematically administered" portion of the *Atkinson* test requires only that the inventory policy be applied to all inventories.

Defendant responds that the record supports the trial court's factual finding that the policy was not systematically administered. The officers testified that they broadly interpret the inventory policy with respect to closed containers and exercise discretion based on the circumstances in individual cases to determine which closed containers to open. Defendant asserts that, under *Atkinson*, "systematically administered" to remove officer discretion does not apply just to the design of the inventory policy, but also to how it is administered in practice by the police—that is, the police must implement the policy in a way that removes individual officer discretion.

In general, an inventory policy "must not permit police to indiscriminately rummage through closed containers within a vehicle." *Stone*, 232 Or App at 362. "[P]roperty is to be listed by its outward appearance; no closed, opaque container may be opened to determine what, if anything, is inside it so that the contents may be inventoried in turn." *State v. Ridderbush*, 71 Or App 418, 426, 692 P2d 667 (1984). We have recognized, however, that "[a]n inventory policy may authorize officers to open closed containers that are 'designed or likely to contain' valuable items." *State v. Hite*, 266 Or App 710, 720, 338 P3d 803 (2014) (quoting *State v. Williams*, 227 Or App 453, 457, 206 P3d 269 (2009)).

We also have concluded that an inventory policy that allows the opening of closed containers designed to hold valuables is not unconstitutionally overbroad simply because the officer must exercise judgment in determining whether a container is designed to hold valuables. *See, e.g., Stone*, 232 Or App at 365 ("By requiring an officer to open all closed

containers that the officer reasonably believes holds danger-
ous or valuable personal property, the Beaverton ordinance
eliminates officer discretion."). Likewise, we have explained
that "our case law establishes that the level of discretionary
judgment involved in determining what constitutes a valu-
able does not render an inventory policy unconstitutionally
overbroad under Article I, section 9." *Cleland*, 289 Or at 383.
Thus, as the state points out, under our case law the type
of discretion necessary for an officer to apply such policies
during an inventory—*viz.*, determining whether a container
is one designed to hold valuables and determining what con-
stitutes a valuable under the policy—does not render the
policy unconstitutionally overbroad.

　　　The precise issue presented here, however, is one we
have not previously confronted: whether evidence that police
are not administering an inventory policy according to its
nondiscretionary terms but instead are administering it
such that officers are exercising their individual discretion
to open various types of closed containers depending on the
circumstances of a particular inventory can render the pol-
icy unconstitutionally overbroad under Article I, section 9.
We conclude that, under *Atkinson*, it can.

　　　Under *Atkinson*, to be valid, "any inventory must be
conducted pursuant to a properly authorized administra-
tive program, designed and systematically administered so
that the inventory involves no exercise of discretion by the
law enforcement person directing or taking the inventory."
298 Or at 10. And, as emphasized in *Fulmer*, "the inventory
exception to the warrant requirement applies only when
its use serves the administrative purposes that justify the
exception and is consistent with the rights protected by
Article I, section 9." 366 Or at 233. When an officer is choos-
ing to open a type of closed container "depending on the cir-
cumstances" of a particular inventory, instead of based on
whether the policy requires that particular container to be
opened, the inventory is not serving the valid purposes for
which inventories are permitted—to protect personal prop-
erty and to protect against false claims—consistent with
the rights protected by Article I, section 9. *See, e.g.*, *Willhite*,
110 Or App at 574 (a general policy that allowed an officer to
search wherever the officer thought to search based on his

personal experience, instead of according to standardized procedure, "is precisely the kind of individual discretion that a policy for inventories has to preclude").

It logically follows that, when officers are opening closed containers "depending on the circumstances" of an individual case because that practice is how the police department is administrating the inventory policy, then the police department is failing to systematically administer the policy, as required by *Atkinson*, in a way that removes officer discretion. That is, in those circumstances, the police department's failure to apply the inventory policy by its precise terms moves beyond a mere individual "deviation" from the policy in a particular inventory and into a failure to systematically administer the policy in a way that serves the purposes of the inventory and comports with Article I, section 9.

Here, the police chief testified that whether an officer, under the inventory policy, would open a tackle box, suitcase, or duffel bag "depends on the circumstances," analogizing it to how an officer determines whether or not to shoot someone who has a gun. He also testified that his department has opened for inventory large backpacks, not just day-pack style backpacks. Greiner, similarly, testified that whether he would open certain containers "depends on the situation." Based on that testimony, the trial court found:

> "The testimony at the hearing from both Chief Wright and Officer Greiner is that in other cases as part of inventories under the City of Tillamook's inventory program they have searched duffel bags, fishing tackle boxes, suitcases and large backpacks, depending on the circumstances of the individual case. This testimony while it makes perfect sense in a practical world, is a text book definition of discretion. Thus, the evidence before the Court is that while the inventory policy does not allow for discretion, both the chief of police and the officer involved in this case are regularly exercising discretion when deciding which items to search as part of the inventory."

We are bound by the court's findings that officers of the Tillamook Police Department, in administering the inventory policy, are exercising discretion to open closed

containers based on the circumstances of the individual case, and not based on the standardized procedures of the inventory policy that allow closed containers to be opened based only on the nature of the closed container itself. As discussed above, that is a failure to systematically administer the inventory policy in the manner required by *Atkinson* for the policy to be constitutionally valid. "The burden is on the state to prove the lawfulness of the inventory," *Bernabo*, 224 Or App at 383, and here the state did not carry that burden. *See State v. Cherry*, 262 Or App 612, 617, 325 P3d 813 (2014) ("If an inventory policy is overbroad, an inventory conducted pursuant to the policy violates Article I, section 9."); *State v. Nordloh*, 208 Or App 309, 313, 144 P3d 1013 (2006) ("The power to inventory a vehicle's contents exists only pursuant to a properly authorized policy. Whether the policy itself is properly authorized does not depend on the circumstances of the application of the policy to a particular defendant."). Accordingly, we affirm.

Affirmed.