No. 987 November 19, 2025 57

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ILYA MARTIN GALITZEN,
*Defendant-Appellant.*

Columbia County Circuit Court
21CR49128; A183092

Michael T. Clarke, Judge.

Submitted October 14, 2025.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Emily P. Seltzer, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman, Solicitor General, and Timothy A. Sylwester, Assistant Attorney General, filed the brief for respondent.

Before Tookey, Presiding Judge, Kamins, Judge, and Jacquot, Judge.

KAMINS, J.

Affirmed.

**KAMINS, J.**

Defendant appeals a judgment convicting him of several drug offenses. He raises two assignments of error. In the first assignment, he challenges the denial of his motion to suppress, arguing that the trial court erred in declining to suppress evidence obtained through a warrantless search of his car during a traffic stop because, according to defendant, it would not have inevitably been discovered. In the second assignment, he contends that the trial court erred in ranking the criminal seriousness category of his attempt crime. We conclude that the trial court did not err. Accordingly, we affirm.

"We review a trial court's denial of a motion to suppress for legal error, mindful that we are 'bound by the trial court's findings of fact if there is sufficient evidence in the record to support them.'" *State v. Miller*, 336 Or App 606, 607, 561 P3d 675 (2024), *rev allowed*, 373 Or 815 (2025) (quoting *State v. Doyle*, 262 Or App 456, 458-59, 324 P3d 598, *rev den*, 355 Or 880 (2014)). "If findings of historical fact are not made on all pertinent issues and there is evidence from which such facts could be decided more than one way, we will presume that the facts were decided in a manner consistent with the court's ultimate conclusion." *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). We state the facts in accordance with that legal standard.

Two St. Helens police officers were on patrol duty when they learned of a Facebook message from a person with defendant's name asking if they wanted "to go for a drive and get spun." The officers interpreted the phrase "get spun" to mean get high. Defendant also sent a message with his GPS location and the make and model of his car. Officers ran a search on defendant and learned that his license and driving privileges were suspended. Officers also learned that defendant's vehicle was uninsured.

Later that evening, one of the officers observed a car that matched defendant's car and noticed that it had a defective rear license plate light. He pulled the car over and requested defendant's driver's license. The area where defendant was pulled over did not have a shoulder and his vehicle

was parked approximately halfway into the road. When officers saw that defendant's license matched the name of the person who messaged them earlier, they told defendant that he was suspected of committing drug crimes and asked him to step out of his vehicle. One officer patted down defendant and found a small quantity of drugs on his person. Officers asked defendant if there would be more drugs in the car and he said that there would. The officers searched defendant's vehicle and located a much larger quantity of drugs in the pocket of a jacket in the back seat. Defendant admitted that the drugs were his and that he was taking them to family members.

Defendant was charged with unlawful delivery of methamphetamine, ORS 475.890, unlawful possession of methamphetamine, ORS 475.894, unlawful delivery of heroin, ORS 475.850, and unlawful possession of heroin, ORS 475.854. Prior to trial, defendant moved to suppress all evidence as stemming from an unlawful stop that was unsupported by probable cause.

In addition to whether probable cause existed, the parties also disputed whether, regardless of probable cause, the evidence would have been "inevitably discovered." The state argued that, because defendant's car presented a hazard on the road, it would have inevitably been towed and its contents inventoried pursuant to department policy, which would have ultimately discovered the drugs in the car. Defendant, however, contended that the department's policy afforded discretion to officers as to whether to tow vehicles that create hazards, and that discretion meant that the drugs would not have been inevitably discovered.

The trial court agreed with defendant that, due to the recent changes in Oregon's drug possession law, his initial arrest and search of his person lacked probable cause. *See, e.g.*, ORS 475.894(2)(a) (2021), *amended by* Or Laws 2024, ch 70, §§ 32, 46 (at the time of defendant's arrest, possession of small quantities of drugs not a crime). However, the court, after looking to the police department's towing policy, ruled that the evidence in the car would have been inevitably discovered. That policy provides that officers are authorized to tow a vehicle that creates a hazard or obstruction—such as

a car that is left parked in the travel lane—when the driver has a suspended or revoked license, but "should use sound judgment in balancing the need to correct a hazardous situation with the potential hardship to a vehicle owner/operator before towing such a vehicle." Once a car is towed, its contents are inventoried. Defendant entered a conditional plea, and this appeal followed.

Article I, section 9, of the Oregon Constitution prevents unreasonable searches and seizures. A warrantless search is presumed unreasonable, unless the state can prove, by a preponderance of the evidence, that an exception to the warrant requirement applies. *State v. Baker*, 350 Or 641, 647, 260 P3d 476 (2011). Additionally, the "inevitable discovery" doctrine permits the state to use evidence obtained in violation of Article I, section 9, to prove a defendant's guilt, so long as "the police inevitably would have obtained the evidence through lawful procedures." *State v. Unger*, 356 Or 59, 64, 333 P3d 1009 (2014).

On appeal, defendant reiterates his argument that the evidence would not have been inevitably discovered because the police department's policy provided officers with some discretion as to whether to tow.[1] The state agrees that the policy provides some discretion, but argues that the officers here would have inevitably towed the vehicle because it was hazardously parked in the middle of the street, defendant's license was not valid, and the vehicle did not have liability insurance. We agree. Both officers testified to those facts at the motion to suppress hearing and we are bound by the trial court's implicit and explicit factual findings on that issue. *See State v. DeJong*, 368 Or 640, 656, 497 P3d 710 (2021) (question of "whether the challenged evidence would have been discovered" is a factual question). Under

_____

[1] Defendant raises an additional argument, based on *State v. Fulmer*, 366 Or 224, 237, 460 P3d 486 (2020), that the evidence would not have been inevitably discovered because when police cite a driver for a violation—as they should have done here—they must offer the driver and any passengers not under arrest the opportunity to remove their personal property from the car before conducting an inventory. Although defendant presents an interesting issue of first impression, it is unpreserved and, because defendant has not requested plain-error review, we express no opinion on it. *See State v. Atwood*, 332 Or App 495, 498 n 2, 549 P3d 51 (2024) (although this court has discretion to correct a plain error, we "normally will not exercise that discretion in the absence of an explicit request for plain-error review and concomitant plain-error arguments").

St. Helens Police Department's tow policy, when a vehicle is stopped for a traffic violation, is parked in a manner that presents a hazard, and officers learn the vehicle operator's license is suspended or revoked—as they did here—officers are authorized to impound the vehicle and have it towed. The policy further provides that, whenever a vehicle is impounded, officers conduct a thorough inventory of the personal property and contents of open containers in the vehicle. Officers are permitted to look inside glove compartments, under seats, and inside wallets and other closed containers "designed for carrying money or small valuables."[2] According to the officer's testimony, defendant's vehicle was parked in the middle of the street in an area where there was not much shoulder, thereby creating a hazard if it was left there unattended. Given those circumstances, it was inevitable that defendant's vehicle would be towed, and the property inside it thoroughly inventoried, regardless of whether he was arrested or merely cited for traffic violations. The trial court thus did not err in denying defendant's motion to suppress.

Defendant also assigns error to the trial court's classification of his conviction for attempted delivery of methamphetamine as crime seriousness level 6 under the sentencing guidelines. The trial court found that the completed crime in this instance would have been delivery of methamphetamine with a "substantial quantity" enhancement, which is sentenced at crime seriousness level 8. *See* ORS 475.900(1)(a) (noting that violation of unlawful delivery of methamphetamine, among other crimes, "shall be classified as crime category 8" if the violation "involves substantial quantities of a controlled substance"); OAR 213-019-0008(5) (so classifying); ORS 475.900(1)(a)(D) (substantial quantity of methamphetamine is 10 grams or greater).

Defendant does not dispute the general proposition that a conviction for an "attempt" crime should be classified as two steps lower than the appropriate category for the completed crime. *See* OAR 213-004-0005(1) (so stating). However, defendant maintains that "the appropriate

---

[2] Defendant does not appear to challenge that, had the car been towed and inventoried with his jacket inside of it, the drugs would have been discovered.

category for the completed crime" is crime seriousness level 4, because the "completed crime" in this instance is delivery of methamphetamine, which is ranked—without the substantial quantity enhancement—as crime seriousness level 4. ORS 475.900(3). Defendant argues that the substantial quantity enhancement is merely an enhancement to determine an appropriate *sentence*, and not a substantive element of the completed crime, at all. *See State v. Unger*, 276 Or App 445, 450, 368 P3d 37 (2016) (substantial quantity subfactor is not an element of the drug crime for purposes of merger). Defendant also argues that "attempt" crimes are substantively different crimes than completed crimes, and the legislature did not include "attempt" crimes when deciding to which crimes the substantial quantities subfactor would attach.

The question, then, is one of construction: what did the drafters intend and, more specifically, what did the 1989 legislature intend when it approved OAR 213-004-0005(1)?[3] In interpreting that provision, we consider the text in context, as well as any useful legislative history. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009).

First, the relevant text of the provision, in full, provides:

"A conviction for an attempted crime shall be ranked on the Crime Seriousness Scale at two crime categories below the appropriate category for the completed crime."

OAR 213-004-0005(1). Reading the plain text of the rule, it appears to compel only one meaning: a conviction for an attempt crime should be ranked two categories below what the conviction for the completed crime *would have been appropriately ranked*, had the crime been completed (and its conviction ranked). For example, here, the crime of delivery of methamphetamine, when alleged and proved with a "substantial quantity" subfactor, has only one appropriate ranking: crime category 8.

---

[3] The Oregon Criminal Justice Commission's sentencing guidelines "are administrative rules, of which the legislature has expressed approval, although without formally adopting them as statutes." *State v. Lane*, 357 Or 619, 624, 355 P3d 914 (2015).

    In arguing otherwise, defendant points to other contexts in which the "substantial quantities" subfactor, or other enhancement factors, are treated differently than the "base crime" of conviction. For example, in the context of merger, two guilty verdicts for drug offenses that allege different subcategory factors will merge into a single conviction, because "the subcategory factors required for sentencing purposes are not themselves elements of the underlying offense." *Unger*, 276 Or App at 450 (internal quotation marks omitted). However, while that context explains how to treat those subcategory factors for the purposes of merger analysis, it is less helpful here, for understanding how to treat those factors when sentencing an attempt crime. In fact, if anything, it leads us to conclude that the subcategory factors that are "*required for sentencing purposes*" must be considered during sentencing. *See id.* (emphasis added).

    Finally, the legislative history provided by the parties supports this interpretation. That history is contained within the *Oregon Sentencing Guidelines Implementation Manual* (September 1989) (Implementation Manual), which includes a comprehensive list of offenses and their respective rankings. *See State v. Davis*, 315 Or 484, 493 n 14, 847 P2d 834 (1993) (the Implementation Manual contains the "official commentary to each of the rules comprising the guidelines"). That Manual does not expressly address the specific question that is presented here, likely because the "substantial quantities" subfactor had not yet been enacted by the legislature. *See* Or Laws 1991, ch 690, § 1 (creating substantial quantities subfactor). The Manual did include, as an appendix, a comprehensive list of offenses and their respective rankings. In that list, the crime categories for other attempt crimes involving crimes that entail subcategory factors are ranked according to how the crime would have been ranked had it been completed, including whatever subcategory factor was alleged and proved. *See, e.g.*, Implementation Manual at 40 (ranking attempted first-degree burglary in category 5, 6, or 7 and first-degree burglary in category 7, 8, or 9); OAR 213-018-0025 (listing first-degree burglary in crime category 7, 8, or 9 based on if certain subcategory factors were included in the commission of the offense); *State v. Casavan*, 139 Or App 544, 548,

912 P2d 946, *rev den*, 323 Or 265 (1996) (subcategory factors of first-degree burglary not elements of the crime for sentencing purposes). It appears, then, that the intent behind OAR 213-004-0005(1) was to rank attempt crimes two categories below the appropriate category that the completed crime, with its appropriate subcategory factors, would have been ranked.

Affirmed.