No. 768          October 30, 2024          743

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JASON THOMAS WILCOX,
*Defendant-Appellant.*

Washington County Circuit Court
19CR75468; A175891

On remand from the Oregon Supreme Court, *State v. Wilcox*, 371 Or 756, 541 P3d 226 (2023).

Andrew Erwin, Judge.

Submitted on remand March 3, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and John Evans, Deputy Public Defender, Office of Public Defense Services, filed the opening brief for appellant. Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Joshua B. Crowther, Chief Deputy Defender, Oregon Public Defense Commission, filed the supplemental brief.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Greg Rios, Assistant Attorney General, filed the answering brief for respondent. Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Rebecca M. Auten, Assistant Attorney General, filed the supplemental brief.

Before Ortega, Presiding Judge, Hellman, Judge, and Landau, Senior Judge.

LANDAU, S. J.

Affirmed.

**LANDAU, S. J.**

This case returns to us on remand from the Oregon Supreme Court. At issue is whether the trial court erred in denying a motion to suppress evidence that had been seized from a backpack that was in defendant's possession as he was being transported to a detox facility. We initially concluded that the trial court had erred in denying the motion because the state had failed to justify the seizure of the backpack independently of its authority to seize defendant himself. *State v. Wilcox*, 323 Or App 271, 276, 522 P3d 926 (2022) (*Wilcox I*).

On review, the Supreme Court concluded that our analysis proceeded from a mistaken framing. *State v. Wilcox*, 371 Or 756, 758, 541 P3d 226 (2023) (*Wilcox II*). The court said that, because the seizure occurred in the context of a noncriminal detention for purposes of transporting defendant to a treatment facility, the case should have been analyzed under principles of law that govern the lawfulness of seizures and searches in that administrative context. *Id*. at 768-69. As instructed, we allowed the parties to submit supplemental briefing on that analysis. We now conclude that the trial court did not err in denying the motion to suppress and affirm.

## I.  BACKGROUND

### A.  *The Trial Court's Decision*

We take the relevant, undisputed facts from our initial opinion:

> "Defendant went to a police station to report being assaulted at a nearby transit station. Officer Baisley and his partner, Deputy Quick, responded. When they arrived to take defendant's statement, defendant had been loaded into an ambulance and was ready for transport to a hospital. The officers followed him to the hospital and waited until he was available to discuss the alleged assault. While waiting to enter the exam room, they could hear defendant yelling at the nurses. As Baisley later recalled, defendant was '[d]isgruntled, argumentative.' When Baisley and Quick were able to enter the exam room, the officers got the sense that defendant was intoxicated. Defendant made it clear that he did not want to talk to them about the alleged assault, so

they turned to leave. As they were crossing the parking lot to their vehicle, hospital security stopped the officers and asked for help. Security told the officers that defendant was refusing medical treatment and they were going to discharge him. The officers returned to the exam room, placed defendant in handcuffs, and advised him that he was being taken into custody for transport to a detox facility. Baisley and Quick walked defendant out to the patrol car. Defendant had a backpack with him. Quick conducted a search of defendant's person and then placed him in the patrol car. Meanwhile, Baisley conducted an inventory of defendant's backpack.

"During the inventory search, Baisley found a butterfly knife. Because butterfly knives are restricted weapons, the officer did a criminal history check on defendant and found that he had previously been convicted of a felony. Quick then arrested defendant for the crime of felon in possession of a restricted weapon, and the officers transported him to the jail rather than the detox facility. Baisley conducted an additional inventory search of the backpack at the jail and found a second butterfly knife."

*Wilcox I*, 323 Or App at 272-73 (brackets in original).

Defendant was charged with two counts of felon in possession of a restricted weapon. ORS 166.270(2). He moved to suppress the evidence of the knives on three grounds. First, he argued that placing him in handcuffs was unlawful because there was no probable cause that defendant had committed a crime. Second, he argued that, although the officers may have had authority to seize defendant for the purposes of transporting him to the detox facility, they lacked authority to seize the backpack. Third, he argued that, if the officers had authority to seize the backpack, they still lacked authority to search its contents.

The state responded that the officers did not need probable cause because they did not arrest him; rather, they detained him for the purposes of a detoxification hold pursuant to ORS 430.399.[1] As for the seizure of the backpack, the state argued that Washington County Code of Ordinances (WCCO) 9.12.040 required them to seize and inventory

---

[1] ORS 430.399(1) provides that "[a]ny person who is intoxicated or under the influence of controlled substances in a public place may be sent home or taken to a sobering facility or to a treatment facility by a police officer."

any personal property of a person being taken into police custody. And, as to the search of that backpack, the state argued that, under *State v. Salkoski*, 299 Or App 180, 448 P3d 718 (2019), the officers had authority to inventory its contents because it was likely to contain valuables.

The trial court rejected defendant's arguments, denied the suppression motion, and entered a judgment of conviction.

B. *This Court's Initial Decision*

On appeal, defendant advanced revised versions of the foregoing arguments. First, he argued that, while ORS 430.399 may have authorized the officers to take him to a detox facility, the statute did not authorize them to handcuff him. Second, he argued that in light of *State v. Edwards*, 304 Or App 293, 466 P3d 1034 (2020), the officers unlawfully seized his backpack without a warrant or applicable warrant exception. And third, he argued that the state's reliance on *Salkoski* to justify its inventory of the contents of the back is misplaced, because *Salkoski* was wrongly decided.

The state responded that defendant's new argument that ORS 430.399 does not authorize officers to handcuff an individual to take them to a detox facility is unpreserved. As to *Edwards*, the state argued that the act of temporarily taking possession of the backpack did not amount to a seizure, and *Edwards*—properly confined to its facts—is not to the contrary. Finally, the state argued that defendant offered no justification for overruling *Salkoski*.

We concluded that the second of the parties' arguments was dispositive. *Wilcox I*, 323 Or App at 273-74. We explained that even a temporary removal of the backpack from defendant's possession amounted to a seizure that requires justification, and that, under *Edwards*, the fact that a seizure of a *person* is authorized by law, that does not also justify the seizure of that person's *property*; a separate justification for seizing the property is required. *Id*. at 274-76. We noted that the state offered no such separate justification for seizing defendant's backpack in this case. *Id*. at 276. As a result, we concluded, the trial court erred in denying defendant's suppression motion. *Id*. at 275-76.

C.   *The Supreme Court's Decision*

The state petitioned for review, again arguing that the officers' temporary removal of the backpack from defendant's possession was not a seizure and that, if it was, this court's decision in *Edwards* requiring an independent justification for that seizure was wrong. The Supreme Court first rejected the state's argument that the officers had not seized the backpack in the first place. *Wilcox II*, 371 Or at 762-65. The court then turned to the question whether the seizure of defendant's backpack was lawful. The court observed that, under its case law, the lawfulness of a seizure of property may depend on whether that seizure was conducted for criminal investigatory purposes or for noncriminal, "administrative" purposes. *Id*. at 765-66. In this case, the court said, the parties agree that the officers seized defendant and his backpack for the noncriminal purpose of transporting him to a detox facility, pursuant to ORS 430.399. *Wilcox*, 371 Or at 767. As a result, the court concluded, the lawfulness of the seizure of defendant's backpack must be evaluated under the principles that govern administrative searches and seizures, not criminal investigations. *Id*. at 767-68.

The problem, the court said, was that neither defendant nor the state had properly engaged in the required analysis of the case as involving an administrative seizure. As a result, the parties' arguments—and this court's decision—about whether the case is controlled by principles set out in *Edwards* are beside the point, because *Edwards* involved a seizure in a criminal investigatory context. The court observed that, given the way the parties framed their arguments before this court, it was "entirely understandable" that we had decided the case the way that we did, "but it [was] nevertheless mistaken." *Id*. at 769. The court decided to vacate our decision and remand to give us the opportunity to respond to briefing by the parties that properly frames their arguments in terms of the law governing administrative searches and seizures. *Id*.

D.   *The Parties' Arguments on Remand*

On remand, both parties have submitted additional briefing on the question of the lawfulness of the seizure of

the backpack under the law governing administrative seizures and searches.

Defendant argues that the state's seizure of the backpack was unlawful because ORS 430.399 authorizes the police only to seize a person, not the property of that person. Even if ORS 430.399 authorizes the police to seize property in the possession of a person being taken into custody, he argues, the record does not demonstrate that defendant possessed the backpack at the time it was seized. Defendant argues that, even if there were a basis for finding that defendant possessed the backpack at the time it was seized, the police were obligated to give him an opportunity to otherwise dispose of the property before seizing it. Finally, defendant argues that, if we conclude that the seizure of the backpack was lawful, the search of its contents was unlawful for the reasons set out in his initial briefing; that is, although the state may be correct that, under this court's decision in *Salkoski*, the search of the backpack was lawful, *Salkoski* was wrongly decided.

In response, the state argues that ORS 430.399 implicitly authorizes the police to seize any personal property that a person may possess while being transported to a detox facility. In the alternative, the state argues that, even if defendant is correct that ORS 430.399 authorizes only the seizure of a person, WCCO 9.12.040 independently required the officers to "inventory the personal property in the possession of a person taken into police custody" when that person is about to be transferred to a treatment facility. The state further argues that there is no law obligating it to afford a person an opportunity to dispose of personal property before it is otherwise lawfully seized. Finally, the state argues that, if we conclude that the seizure of the backpack was lawful, the search of its contents also was lawful, consistently with this court's decision in *Salkoski*.

## II. ANALYSIS

On remand, three issues remain for us to decide. First, there is defendant's initial argument on appeal that, although ORS 430.399 authorized the officers to take him to a detox facility, it did not authorize them to place him

in handcuffs. Second, there is the issue of the lawfulness of the seizure of the backpack in the context of a noncriminal investigation. Third, there is the issue of the lawfulness of the search of that backpack. The first issue requires no extended discussion, as it is unpreserved. Before the trial court, defendant argued only that the police officers lacked probable cause to arrest him. On appeal, defendant argued for the first time that, as a matter of statutory interpretation, ORS 430.399 does not authorize the police to place an individual in handcuffs. That is a completely different issue from the one asserted to the trial court, and we decline to entertain it for the first time on appeal. *See e.g.*, *Peeples v. Lampert*, 345 Or 209, 219, 191 P3d 637 (2008) (explaining that an issue must be presented to the trial court for appellate courts to consider it on appeal). We turn, then to the remaining two issues.

A.   *Lawfulness of the Seizure of the Backpack*

Article I, section 9, of the Oregon Constitution, establishes a right to be secure against "unreasonable search or seizure." A search or seizure conducted without a warrant is generally regarded as "*per se* unreasonable" unless a well-established exception to the warrant requirement applies. *State v. Fulmer*, 366 Or 224, 230, 460 P3d 486 (2020). One such well-established exception applies when the search or seizure is conducted pursuant to a legislatively adopted inventory policy. *Id*. The Supreme Court has explained that the validity of any such administrative search or seizure depends on two steps: First, there must be a "law or ordinance providing sufficient indications of the purposes and limits" of police authority. *Wilcox II*, 371 Or at 766. Second, if such a law or ordinance exists, the search or seizure must have been conducted pursuant to that law or ordinance and consistent with its purposes, so that the police exercised no discretion as to what is or is not searched or seized. *Id*. at 767.

In this case, it is undisputed that the police seized defendant pursuant to ORS 430.399, which authorizes police to take an intoxicated person to a sobering facility or treatment facility. According to the state, the police officers then

seized defendant's backpack pursuant to WCCO 9.12.040(A), which provides that:

> "[a] deputy will inventory the personal property in the possession of a person taken into police custody and such inventory will be conducted whenever * * * [c]ustody of the person will be transferred to another law enforcement agency, correctional facility, or 'treatment facility' as that phrase is used in ORS [430.399] or such other lawfully approved facility for the involuntary confinement of persons pursuant to Oregon Revised Statute."

The ordinance specifies its purposes as to:

> "1. Promptly identify property to establish accountability and avoid spurious claims to property;
>
> "2. Fulfill the requirements of ORS 133.455 [requiring receipts for the values taken into custody] to the extent that such statute may apply to certain property held by the deputy for safekeeping;
>
> "3. Assist in the prevention of theft of property;
>
> "4. Locate and ensure the safe handling and/or disposal of toxic, flammable, hazardous or explosive substances;
>
> "5. Locate weapons and instruments that may facilitate an escape from custody or endanger law enforcement personnel; and
>
> "6. Reduce the danger to persons and property."

WCCO 9.12.040(B). The ordinance further spells out the procedure for conducting the inventory. Among other things, it requires officers to "remove and inventory the contents of closed containers if the closed container is designed for or likely to contain valuables or money including but not limited to * * * closed backpacks." WCCO 9.12.040(C)(3).

The ordinance, by its terms, qualifies as a source of authority for the seizure of the backpack in this case. It requires officers to inventory any property in the possession of a person being taken into custody for the purposes of being transported to a treatment facility.

Defendant does not argue to the contrary. Instead, in his supplemental briefing he argues that ORS 430.399 supplies authority to seize only defendant himself, not the

property that is in his possession at the time. But, given that the county ordinance supplies the necessary authority, we need not address whether ORS 430.399 does so as well.

Defendant also argues that, to the extent that the officers may have had authority to seize property in his possession, that authority is limited to property "in the possession" of the person being taken into custody. WCCO 9.12.040. Here, he argues, "there was no evidence" that the backpack "was in defendant's personal possession at the time of custody." Defendant appears to assume that "possession" in this context means "on defendant's person." He cites no authority for such an assertion, however. And in fact, the assertion is at odds with established case law.

On point in that regard is *State v. Connally*, 339 Or 583, 585-86, 125 P3d 1254 (2005), in which police arrested the defendant, impounded the car that he had been driving, and seized a fanny pack that had been left in the car. The police acted pursuant to a city ordinance that authorized them to seize the property "in the possession" of a person being taken into custody. *Id*. at 598-90. The defendant argued, among other things, that the fanny pack was not in his possession at the time he was taken into custody. *Id*. at 588. The Supreme Court rejected the argument, explaining that the ordinary meaning of the term "is broad enough to include personal property within the suspect's immediate reach as well as property under the suspect's dominion and control." *Id*. at 591.

Thus, defendant's argument here that "possession" under the county code means "in defendant's personal possession at the time of custody" is unavailing in light of *Connally*. Moreover, and in any event, there is in fact testimony in the record that defendant had the backpack with him when the officers took him to the police car.

Defendant also argues that the seizure of his backpack was unlawful because the officers did not offer him "a reasonable opportunity to dispose of his personal belongings" before taking him into custody. According to defendant, the Supreme Court required just such an opportunity in *Fulmer*. That case, however, does not apply here.

In *Fulmer*, the defendant was cited for driving without a license and without insurance. 366 Or at 226-27. Police officers told her that they would have to impound the vehicle and inventory its contents. *Id*. at 227. The defendant was not told that she could take any items from the vehicle before it was towed away. *Id*. Instead, they seized a purse sitting on the passenger seat and searched its contents, finding methamphetamine. *Id*. She was charged with unlawful possession of a controlled substance. *Id*. She moved to suppress the evidence of the drugs, arguing that the seizure of her purse was unlawful because police should have given her an opportunity to take it with her rather than leave it in the car. *Id*.

The Supreme Court agreed. The court held that an administrative search is lawful only if it is conducted in a manner consistent with its purposes. *Fulmer*, 336 Or at 233-34. In that case, the court said, the purposes of the inventory included the protection of the property of the owner and preventing the assertion of false claims against the police. *Id*. at 235. Considering those purposes, the court concluded, "when the occupant of a vehicle about to be impounded and inventoried is present, not under arrest, and competent," police are obligated to provide "notice that he or she may retrieve personal items from the vehicle." *Id*. at 237. The court specifically distinguished that case from those in which the defendant is intoxicated and thus incapable of taking care of the personal property. *Id*. at 234. *Fulmer* has no application here, where defendant himself was being taken into custody precisely because he was intoxicated and thus incapable of taking care of his property.

B.   *Lawfulness of the Search of the Backpack*

The question, then, is whether the search of defendant's backpack was accomplished in accordance with the Washington County ordinance and its purposes. In that regard, the state notes that, as required by that ordinance, the officers seized the backpack, opened it, and inventoried its contents. The state notes that, in *Salkoski*, this court reaffirmed the lawfulness of precisely that action, consistently with a long line of prior Court of Appeals case law.

Defendant concedes that the officers in this case complied with the Washington County ordinance in opening his backpack and conducting an inventory of its contents. Further, he concedes that the "inventory of defendant's backpack in this case is nearly indistinguishable from the inventory that this court approved in *Salkoski*." His sole argument is that *Salkoski* and the cases on which it relied are wrong and should be disavowed. The correct approach, he contends, is to adopt a "bright-line rule" that prohibits opening any closed, opaque container.

In *Salkoski*, the police took the defendant into custody to transport him to a detox facility. 299 Or App at 181. At the time, he had in his possession a backpack. *Id*. Pursuant to a local ordinance, the police seized the backpack, opened it, and inventoried its contents. *Id*. The defendant argued that the search of the contents of the backpack was unlawful, because there was no evidence that it was specifically designed to carry valuables. *Id*. at 181-82. We rejected the argument, holding that "an inventory policy may lawfully authorize police officers to open closed containers that are either designed to hold valuables or are likely to contain them." *Id*. at 183-84. We explained that a line of decisions from this court dating back to *State v. Mundt/Fincher*, 98 Or App 407, 412, 780 P2d 234, *rev den*, 308 Or 660 (1989), has adopted the position that, although ordinarily it is not permissible to open closed, opaque containers, an exception applies when such containers typically contain valuables. *Id*. at 183. The exception, we said, had been adopted to protect personal property and prevent claims against the police. *Id*.

Between *Mundt/Fincher* and *Salkoski*, this court applied the same reasoning to justify the police opening other closed, opaque containers that are likely to contain valuables. *See State v. Cleland*, 289 Or App 379, 410 P3d 386 (2017), *rev den*, 362 Or 699 (2018) (case for "holding a small external computer hard drive or a small video game console"); *State v. Komas*, 170 Or App 468, 13 P3d 157 (2000) (shoulder bag); *State v. Johnson*, 153 Or App 535, 958 P2d 887, *rev den*, 327 Or 554 (1998) (briefcase); *State v. Bean*, 150 Or App 223, 946 P2d 292 (1997), *rev den*, 327 Or 448 (1998) (fanny pack) .

Defendant argues that all those cases—from *Mundt/Fincher* to *Salkoski*—were incorrectly decided in that they rely on a fiction that some closed, opaque containers are, in effect, open and transparent. He contends that such a fiction runs counter to preexisting case law from both this court and the Supreme Court.

In advancing that argument, however, defendant faces a high hurdle. He must demonstrate not just that the earlier decisions were in some way mistaken, but also that they were "plainly wrong." *State v. Civil*, 283 Or App 395, 406, 388 P3d 1185 (2017). It must be demonstrated that the prior decisions failed to consider an important argument or failed to apply the required analytical framework. *Farmers Ins. Co. v. Mowry*, 350 Or 686, 698, 261 P3d 1 (2011). Reiterating arguments that previously have been rejected is not enough. *Id*. at 700, 704.

Defendant cannot meet that burden. *Mundt/Fincher* has been the subject of criticism since the day of its issuance. In fact, the decision itself was not unanimous, drawing a dissent that advanced precisely the same argument that defendant relies on here. *Mundt/Fincher*, 98 Or App at 417-18 (Butler, J., concurring in part and dissenting in part). It was questioned again in this court's *en banc* decision in *Johnson*, 153 Or App at 546-50 (Armstrong, Landau, Haselton, and Wolheim, JJ., dissenting). And it was more recently challenged in *Cleland*, 289 Or App at 383 (James, J., concurring).

Defendant says nothing in this case that has not already been said, and rejected, in those previous cases. Indeed, he candidly declares that his contention here is predicated on those very arguments. Under the circumstances, his arguments are better aimed at the Supreme Court. In the meantime, we are bound by this court's precedents.

Affirmed.