498 November 25, 2025 No. 49

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Respondent on Review,*

*v.*

JASON THOMAS WILCOX,
*Petitioner on Review.*

(CC 19CR75468) (CA A175891) (SC S071582)

En Banc

On review from the Court of Appeals.*

Argued and submitted September 25, 2025.

Joshua B. Crowther, Deputy Public Defender, Oregon Public Defense Commission, Salem, argued the cause and filed the briefs for petitioner on review. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section.

Peenesh Shah, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. Also on the brief were Dan Rayfield, Attorney General, and Benjamin Gutman, Interim Deputy Attorney General.

JAMES, J.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

_____

* Appeal from Washington County Circuit Court, Andrew Erwin, Judge. 335 Or App 743, 560 P3d 91 (2024).

**JAMES, J.**

ORS 430.399 permits police officers to take intoxicated persons into custody for noncriminal purposes—to take them to a "sobering facility or to a treatment facility"—in what is colloquially known as a "civil detox hold." In this case, we consider whether Article I, section 9, of the Oregon Constitution, allows the state, pursuant to an inventory policy, to search an opaque closed container that does not announce its contents when the container is in the possession of a person being taken into custody on a civil detox hold. Reasoning from its own case law, the Court of Appeals concluded that the state could open an opaque closed container when inventorying the property of someone on a civil detox hold, so long as the search was conducted pursuant to a properly adopted inventory policy, and the container was one that could reasonably hold valuables. *State v. Wilcox*, 335 Or App 743, 560 P3d 91 (2024) (*Wilcox III*).

However, our cases establish otherwise. Inventory searches conducted entirely consistently with promulgated policies that do not afford officer discretion may still offend the Oregon Constitution. In determining whether an inventory policy exceeds the permissible bounds of Article I, section 9, we look to the totality of the circumstances, which can include, but are not limited to, the purposes of the policy, the source of authority for why the individual, or the object, came into police custody, and the privacy rights implicated. In the context of a person coming into police custody pursuant to a civil detox hold, our prior cases establish that the inventory search of a closed opaque container that does not announce its contents violates Article I, section 9. The decision of the Court of Appeals and the judgment of the trial court are reversed.

## I. BACKGROUND

This is the second time that this case is before us. The facts that gave rise to this incident were previously set out in *State v. Wilcox*, 371 Or 756, 758-59, 541 P3d 226 (2023) (*Wilcox II*), where we accepted the Court of Appeals' description:

"'Defendant went to a police station to report being assaulted at a nearby transit station. Officer Baisley and his partner, Deputy Quick, responded. When they arrived to take defendant's statement, defendant had been loaded into an ambulance and was ready for transport to a hospital. The officers followed him to the hospital and waited until he was available to discuss the alleged assault. While waiting to enter the exam room, they could hear defendant yelling at the nurses. As Baisley later recalled, defendant was "[d]isgruntled, argumentative." When Baisley and Quick were able to enter the exam room, the officers got the sense that defendant was intoxicated. Defendant made it clear that he did not want to talk to them about the alleged assault, so they turned to leave. As they were crossing the parking lot to their vehicle, hospital security stopped the officers to ask for help. Security told the officers that defendant was refusing medical treatment and they were going to discharge him. The officers returned to the exam room, placed defendant in handcuffs, and advised him that he was being taken into custody for transport to a detox facility. Baisley and Quick walked defendant out to the patrol car. Defendant had a backpack with him. Quick conducted a search of defendant's person and then placed him in the patrol car. Meanwhile, Baisley conducted an inventory of defendant's backpack.

"'During the inventory search, Baisley found a butterfly knife. Because butterfly knives are restricted weapons, the officer did a criminal history check on defendant and found that he had previously been convicted of a felony. Quick then arrested defendant for the crime of felon in possession of a restricted weapon, and the officers transported him to the jail rather than the detox facility. Baisley conducted an additional inventory search of the backpack at the jail and found a second butterfly knife.'"

(Quoting *State v. Wilcox*, 323 Or App 271, 272-73, 522 P3d 926 (2022) (*Wilcox I*).)

In *Wilcox I*, the Court of Appeals considered the seizure of defendant's backpack, holding that it was unlawful under Article I, section 9, of the Oregon Constitution. 323 Or App at 276. The court based that conclusion on its own case law, specifically, *State v. Edwards*, 304 Or App 293, 466 P3d 1034 (2020) (holding that the warrantless seizure of a backpack for inventory purposes was unlawful because the

state had failed to prove that the seizure of the backpack fell within an established, delineated exception to warrant requirement). The state petitioned for review, arguing that the Court of Appeals had erred and asking us to overrule *Edwards*. *Wilcox II*, 371 Or at 758.

We allowed review, but we determined that resolution of the issue before us did not require us to examine *Edwards*. Instead, we briefly recounted some of our administrative seizure and search case law, reiterating that a "seizure or search of persons or property can occur outside the criminal investigatory process, in what we have termed an 'administrative' seizure or search. *** In that context, we require that extra-executive control be provided by appropriate legislatively imposed limitations sufficient to guarantee constitutional reasonableness." *Wilcox II*, 371 Or at 766. We then noted that, in the context of administrative seizures and searches, a part of the inquiry was to "look for a 'source of the authority,' that is, a law or ordinance providing sufficient indications of the purposes and limits of executive authority." *Id*. We observed that "the Court of Appeals' approach did not grapple with the administrative nature of the seizure here." *Id*. at 769. "For that reason," we concluded, "the best remedy in this case is to vacate the decision of the Court of Appeals, and remand to that court for further proceedings so that court can benefit from briefing by the parties that correctly conceptualizes the issues consistent with this opinion." *Id*.

On remand in the Court of Appeals, defendant disputed both the lawfulness of the seizure of the backpack and the lawfulness of the eventual search of the backpack.[1]

The Court of Appeals first concluded that the seizure of the backpack was lawful. The court observed that a warrantless seizure is generally considered "*per se* unreasonable" unless a well-established exception to the warrant requirement applies. *Wilcox III*, 335 Or App at 750. However, the court observed that one such exception allows searches

---

[1] In the Court of Appeals, defendant also challenged the seizure of his person, but the Court of Appeals did not address that issue, because it concluded that defendant's argument was unpreserved. *Wilcox III*, 335 Or App at 750. Defendant does not renew that argument in this court.

conducted pursuant to a legislatively adopted inventory policy. The court stated that defendant had been seized pursuant to ORS 430.399, which authorizes police to take an intoxicated person to a sobering or treatment facility, and that an applicable regulation (in this instance, Washington County Code of Ordinances (WCCO) 9.12.040), authorized the police to seize and inventory any personal property of a person being taken into police custody. *Wilcox III*, 335 Or App at 751-52. The Court of Appeals concluded that the seizure of defendant's backpack was lawful.

The Court of Appeals reached the same conclusion with respect to the search of the backpack. In explaining the issue before it, the court stated:

> "[T]he officers seized the backpack, opened it, and inventoried its contents. The state notes that, in [*State v.*]*Salkoski*[, 299 Or App 180, 183, 448 P3d 718 (2019)], this court reaffirmed the lawfulness of precisely that action, consistently with a long line of prior Court of Appeals case law."

*Wilcox III*, 335 Or App at 753. The Court of Appeals went on to explain:

> "In *Salkoski*, the police took the defendant into custody to transport him to a detox facility. At the time, he had in his possession a backpack. Pursuant to a local ordinance, the police seized the backpack, opened it, and inventoried its contents. The defendant argued that the search of the contents of the backpack was unlawful, because there was no evidence that it was specifically designed to carry valuables. We rejected the argument, holding that an inventory policy may lawfully authorize police officers to open closed containers that are either designed to hold valuables or are likely to contain them. We explained that a line of decisions from this court * * * has adopted the position that, although ordinarily it is not permissible to open closed, opaque containers, an exception applies when such containers typically contain valuables."

*Id.* at 754 (citations and internal quotation marks omitted).[2] The Court of Appeals noted that it had reached the same

---

[2] For context, in *Salkoski*, as in this case, an individual was taken into custody for transport "to a detox facility" and a police officer seized and searched his closed and opaque black backpack pursuant to an inventory policy. The Court of Appeals upheld that search, again reasoning from its own case law:

result in several of its other cases, including *State v. Mundt/Fincher*, 98 Or App 407, 412, 780 P2d 234, *rev den*, 308 Or 660 (1989). Thus, relying on its own case law, the Court of Appeals held that the police officer had conducted a permissible inventory search of the contents of the defendant's closed and opaque backpack because it was the type of container that was likely to contain valuables.

Defendant then filed a petition for review, which we allowed. Before this court, defendant does not renew his argument that the seizure of the backpack was unlawful. Rather, the parties' arguments focus exclusively on the search of the backpack and the Court of Appeals' reliance on its case law permitting the opening and searching of closed, opaque containers that are designed to, or likely to, contain valuables. Defendant asks us to overrule a number of Court of Appeals decisions addressing inventory searches of all kinds, particularly *Mundt/Fincher*. The state asks us, effectively, to expand *Salkoski* and *Mundt/Fincher* by announcing that, in all contexts, government officials may enact inventory policies that require the opening of closed, opaque containers, and that searches conducted in compliance with such policies are not unreasonable under Article I, section 9.

Our task is more limited than either party urges. As both parties recognize, inventory searches arise in a variety of contexts. Some occur entirely without a criminal nexus—for example, the police may conduct an inventory search of a car that has been abandoned by the side of the road. Other inventory searches occur after an arrest, perhaps at jail booking. Still others, as in this case, arise in the context of civil detox holds. This case does not require us to consider the lawfulness of inventory searches in all contexts. Rather, we are called upon only to consider the inventory search of defendant's backpack—a closed and opaque container that did not announce its contents—after defendant was brought into custody on a civil detox hold. As we will explain, in that

---

"Ordinarily, an inventory policy may not authorize officers to open closed, opaque containers during the course of an inventory. Certain containers, however, are not treated as closed and opaque because they typically contain valuables; inventory policies are permitted to authorize the opening of such items to protect the owner's property and prevent claims against the police."

*Salkoski*, 299 Or App at 183 (citations omitted).

context, our case law is clear, and it does not permit such a search.

## II.   ANALYSIS

### A.   *Our Inventory Search Jurisprudence*

As previously noted, in both *Wilcox I* and *Wilcox III*, the Court of Appeals based its reasoning almost entirely on its own case law. We therefore think it helpful to review a selection of our cases pertinent to the inventory search of containers. When set out as a chronological body of work, as we do below, we believe that the cases show a consistent set of principles we have applied in evaluating inventory searches. Following our chronological review of those cases, we apply those principles to the arguments made in this case and, in so doing, illustrate how the Court of Appeals erred.

#### 1.   State v. Keller

We first considered the lawfulness of an inventory search in *State v. Keller*, 265 Or 622, 623-24, 510 P2d 568 (1973). In *Keller*, police stopped the defendant while driving. The defendant's license had been suspended, and his passenger was intoxicated. With no one able to take control of the vehicle, the police called a tow truck to remove defendant's car from the street. In anticipation of the car being towed, police proceeded to inventory the car's contents. As the court stated, "The police inventory of the car's contents was pursuant to administrative requirements that police note the type of motor and transmission, tires, valuables, body damage, color of car, and weapons." *Id*. at 624. During that inventory, officers observed an open cosmetic case on the floor that plainly displayed syringes and needles. In addition, officers discovered a fishing tackle box held closed by a red wire. The police opened the tackle box and saw that it contained narcotics, which led to the defendant's conviction.

We concluded that evidence of the needles and syringes in the open cosmetics case was not subject to suppression, as those items were in plain view. *Id*. at 624-25 ("Under facts such as we have in the instant case, the great

weight of authority supports such a search as reasonable and lawful as to evidence of crime that comes into 'plain view' of the inventorying officer.") The opening of the tackle box, however, required a more involved analysis.

We surveyed the treatment of closed containers in inventory searches in various jurisdictions. Ultimately, we expressed support for the "better reasoning" of two cases: *State v. Gwinn*, 301 A2d 291, 294 (Del 1972), and *Mozzetti v. Superior Court of Sacramento County*, 4 Cal 3d 699, 484 P2d 84 (1971). *Keller*, 265 Or at 627-29. Our discussion of *Mozzetti* explained that the defendant had been involved in a vehicle collision and was taken to the hospital. Police were required to remove the car from the highway, and, "[i]n accordance with standard (police) procedure," they inventoried the car before towing it away. *Keller*, 265 Or at 627. As we related, during the inventory search, "the officer saw an unlocked suitcase on the back seat, in addition to other items in plain view. 'Finding the suitcase unlocked he opened it, apparently to determine if it contained any articles of value.'" *Id.* (quoting *Mozzetti*, 4 Cal 3d at 702, 484 P2d at 85).

The *Mozzetti* court held that that search was unconstitutional under the Fourth Amendment to the United States Constitution and explained its reasoning as follows:

> "'We have no doubt that the police, in the course of such valid protective measures, may take note of any personal property in plain sight within the automobile being taken into custody. Any objects clearly visible without probing— including the suitcase in this instance—may be listed in an inventory or other police report. What concerns us here is the reasonableness of the search of the closed container.

> "'* * * Thus we find unpersuasive the contention made by the People that the inventory of contents not within plain sight is reasonable because it is necessary to protect the property for the benefit of the vehicle owner.'"

*Keller*, 265 Or at 627 (quoting *Mozzetti*, 4 Cal 3d at 707, 484 P2d at 89 (omission in *Keller*; citations omitted)).

We approved that reasoning, and we found persuasive the *Mozzetti* court's conclusion, which this court paraphrased as stating that "the warrantless search into the

closed suitcase and seizure of the marijuana was not justified where the search was not incident to lawful arrest, based on probable cause to believe that the vehicle contained contraband and there were no exigent circumstances which made the search reasonable and necessary." *Keller*, 265 Or at 627-28.

　　*Keller* adopted *Mozzetti*'s reasoning in its interpretation of Article I, section 9, but, as noted, *Mozzetti* considered the lawfulness of the inventory search under the Fourth Amendment. Notably, *Mozzetti*'s view of the Fourth Amendment was later overruled in *South Dakota v. Opperman*, 428 US 364, 371, 96 S Ct 3092, 49 L Ed 2d 1000 (1976), where the United States Supreme Court explicitly cited *Mozzetti* as the "seminal" case reaching the "contrary result." *Opperman* held that "inventories [of automobiles] pursuant to standard police procedures are reasonable." *Id*. at 372. In reaching that conclusion, *Opperman* departed from *Mozzetti*'s reasoning for two primary reasons. First, the Court emphasized "the inherent mobility of automobiles," which creates circumstances of *per se* "exigency," such that, "as a practical necessity, rigorous enforcement of the warrant requirement is impossible." *Id.* at 367. And second, the court relied on the diminished "expectation of privacy with respect to one's automobile." *Id*.[3]

　　2.　State v. Downes

　　Three years after the United States Supreme Court decided *Opperman*, we granted review in several automobile search and seizure cases in an effort to clarify the law regarding inventory searches of automobiles under Article I, section 9. One of those cases was *State v. Downes*, 285 Or

---

[3] We have rejected both of *Opperman*'s rationales in the context of Article I, section 9. We have rejected the proposition that the inherent mobility of automobiles creates *per se* exigency. *State v. McCarthy*, 369 Or 129, 177, 501 P3d 478 (2021) ("The [automobile] exception was not well founded or clearly reasoned; it was not intended to be permanent; it has not provided stability or clarity; it is inconsistent with other, more recent cases; [and,] given technological changes, it is no longer justified[.] *** [I]n order to justify a warrantless seizure or search of a vehicle based on exigent circumstances, the state must prove that exigent circumstances actually existed at the time of the seizure or the search, each of which must be separately analyzed.") Second, "the privacy protected by Article I, section 9, is not the privacy one reasonably *expects* but the privacy to which one has a *right*." *State v. Campbell*, 306 Or 157, 164, 759 P2d 1040 (1988) (citing *Tanner*, 304 Or 312, 321 n 7, 745 P2d 757 (1987) (emphases in original)).

369, 371, 591 P2d 1352 (1979). In *Downes*, the defendant was stopped while driving a school bus. "Inside the bus, in plain view, the officers saw property they knew was stolen and the officers, therefore, arrested [the] defendant." *Id*. The bus was impounded and taken to a lot, where it was inventoried. During that inventory, officers found a cosmetic kit, opened it, and found narcotics. *Id*.

At a hearing on the defendant's motion to suppress and in its briefing before the Court of Appeals and this court, the state argued that the search was constitutionally permissible as an inventory search. In our decision in *Downes*, we did not discuss *Opperman*, but, based on our decision in *Keller*, we disagreed that the inventory search of the closed cosmetic kit was lawful. We explained that, in *Keller*, we held "that the police were not constitutionally authorized, in taking inventory of the contents of a rightfully impounded vehicle, to open a closed fishing tackle box found in the vehicle. *** The search in the present case cannot be justified as an inventory search." *Id*. at 371-72.

3.    State v. Newman

Our next significant discussion of inventory searches occurred several years after *Keller* and *Opperman* were decided. In *State v. Newman*, 292 Or 216, 218, 637 P2d 143 (1981), we considered the lawfulness of an inventory search in the context of a civil detox hold. Interestingly, however, we did not specifically analyze the search in that case as an inventory search. Rather, without mentioning the word "inventory," we considered whether "police without a warrant in a noncriminal and nonemergency situation [may] search the property of an intoxicated person for identification at the time the person is taken into custody[.]" *Id.* at 218. We also note that *Newman* arose in the context of a search for identification. *Newman* could be seen as sufficiently unique that one might not include it in our chronological list. However, it is referenced repeatedly in subsequent cases, and in the interests of contextualizing those later decisions, we include it.

In *Newman*, an officer had handcuffed the defendant, who was intoxicated, and placed her in the back of a

patrol car to transport her to a detoxification facility. 292 Or at 221. After placing her in the car, the officer opened her closed purse to search for identification and discovered illegal controlled substances. Without citing a state or federal constitutional provision, the court held that that search was unconstitutionally unreasonable, stating:

> "The purpose of a purse or handbag is to carry personal things. An individual's expectation of privacy in a purse is probably greater than in any other property except the clothing worn by a person. We do not think it was necessary for the police officer to know the name of the person that he was going to transport to the treatment or holding facility. The officer could have transported the defendant under the name of 'Jane Doe.' Many of the regular clients of detoxification centers, treatment and holding facilities are known only to their peers and the police as 'Shorty,' 'Slim,' 'Red,' or 'Little Mac.'

> "We do not reach the question whether or not the purse of the defendant could have been searched for identification as a part of the booking procedure at the treatment or holding facility. We hold only that it was not reasonable to search the defendant's purse for identification for the purpose of transporting the defendant to the facility."

*Id.* at 222. Thus, in the precise circumstances of the instant case—where the police conducted a search of an opaque, closed container among an individual's possessions prior to transporting that individual to a detoxification facility—the court held that such a search was unconstitutionally unreasonable.

    4.   State v. Atkinson *and* State v. Perry

A few years later, in 1984, we decided two cases presenting issues concerning the lawfulness of inventory searches: *State v. Atkinson*, 298 Or 1, 4, 688 P2d 832 (1984) (*Atkinson II*), in which we considered the lawfulness of an inventory search of the glove compartment of an impounded vehicle, and *State v. Perry*, 298 Or 21, 24, 688 P2d 827 (1984), decided the same day, which involved an inventory search of a closed container belonging to a person temporarily detained for detoxification.

In *Atkinson*, the state had towed an impounded vehicle to a secured facility, and an officer conducted an inventory search of the vehicle's unlocked glove compartment. 298 Or at 3. The Court of Appeals, relying on *Keller*, held that the inventory search of the glove compartment of a properly impounded automobile, which was conducted pursuant to the standing policy of the Polk County Sheriff's Department, violated the defendant's rights under Article I, section 9, because the inventory search was not justified by a need to protect the defendant's property and there was an "investigatory motive" behind the search. *State v. Atkinson*, 64 Or App 517, 669 P2d 343 (1983) (*Atkinson I*).

We allowed the state's petition for review, in which the state argued that *Keller* should be limited to its facts. Specifically, the state asserted that, because *Keller* involved the search of a closed container found in the trunk of a car, that holding was not binding on this court's resolution of *Atkinson*, which concerned the search of the unlocked glove compartment of a car. *Atkinson* is best understood in light of the specific argument made by the state in that case:

> "Plainly, *State v Keller* is distinguishable from this case. As is evident from its facts and the cases upon which it relied, *Keller* dealt with the contents of a *closed container* that itself was part of the car's contents. The case at bar does not involve such a closed container, but rather an unlocked glove compartment, a built-in storage compartment within the passenger compartment of the car in which personal effects are kept. *** [*Keller*] prohibited inventorying the contents of separate closed containers within the car. That case did not directly settle the issue presented here, whether in performing such an inventory the police may lawfully search an open glove compartment or other storage component of an automobile."

Petition for Review of The State of Oregon at 5-6, *State v. Atkinson*, 298 Or 1, 688 P2d 832 (1984) (SC S30071) (emphasis in original). Notably, in *Atkinson*, the state did not seek a ruling that would broadly sanction the practice of opening closed containers during inventories. Rather, the state asked that we announce the following rule of law: "[t]he search did not go beyond the open areas of the passenger compartment, and the unlocked glove compartment. *** We urge the court

\* \* \* to hold that inventories *of the scope of that performed in this case* are permissible under the Oregon Constitution." (Emphasis added.)[4]

In considering the constitutionality of inventory searches of lawfully impounded vehicles, we began by listing three principal reasons often asserted as justifications for the state inventories of impounded personal property: (1) "inventories protect the owner's property while in police custody"; (2) "inventories reduce and tend to prevent the assertion of false claims against police"; and (3) "in an age of increasing violence, some danger to police and others arises from the impoundment of uninventoried property." *Atkinson*, 298 Or at 7. As to that last rationale, we noted that "[r]eliance on this reason must have a concrete basis in specific circumstances; it may not simply be assumed as a basis of a general precautionary practice." *Id.* at 8.

In light of those rationales, the court held that, "[i]f the responsible policy makers decide that protective reasons of this nature justify prescribed procedures for inventorying the contents of an impounded vehicle, such a policy is not inherently 'unreasonable' within the meaning of Article I, section 9," where certain conditions are satisfied. *Id.*

The court then explained that the first of those conditions was that the court must consider the source of authority for the seizure or search of the person or object. In *Atkinson*, that required the court to consider whether the vehicle was lawfully impounded. 298 Or at 8-9. The court observed that the particular statute at issue authorized police to take custody of abandoned vehicles and, further, provided for a lien on not just the vehicle but, importantly, on "*its contents* to pay storage and towing charges." *Id.* at 9 (emphasis in original). We contrasted that statute with those that allow government officials "only limited authority to

---

[4] Before the Court of Appeals, the state had argued that *Keller* was no longer good law in light of the United States Supreme Court's decision in *Opperman*. The Court of Appeals rejected that argument because the United States Supreme Court's decision in *Opperman*, applying the Fourth Amendment to the United States Constitution, did not persuade the court that it should not follow *Keller* or that the court should apply *Opperman*'s reasoning under the Fourth Amendment in interpreting Article I, section 9. For those reasons, the court concluded that it was bound to follow *Keller*. *Atkinson I*, 64 Or App at 521-22. The state abandoned that argument on review in this court.

take temporary control of personal property, such as moving an automobile after a traffic accident," noting that, in such cases, the officers' authority does not extend to conducting a general inventory of the automobile's contents." *Id*. at 9-10.

The second condition identified by the *Atkinson* court provided that, if the vehicle is in lawful administrative custody, then the court must determine whether the inventory search was "conducted pursuant to a properly authorized administrative program, designed and systematically administered so that the inventory involves no exercise of discretion by the law enforcement person directing or taking the inventory." 298 Or at 10. Citing *Perry*, we noted that the degree to which an investigating officer may scrutinize the items found in the inventory search is limited, *id*., and we observed that, in *Keller*, we had held that police conducting an inventory of an automobile "'pursuant to administrative requirements'" could not open a fishing tackle box tied shut with wire but would be required to inventory the container as "'one fishing tackle box.'" *Atkinson*, 298 Or at 10 (quoting *Keller*, 265 Or at 624-26).

We ultimately remanded in *Atkinson* for further development of the factual record, including, among other things, a determination as to whether the inventory search was conducted pursuant to a properly authorized program. 298 Or at 11. In doing so, we briefly discussed the glove compartment/container distinction that the state had built its argument around. We held that "[t]he contents of a glove box are within the permissible scope of an authorized inventory." *Id*. at 11-12. However, we suggested that we would not categorically countenance the opening of closed containers found in the glove compartment (a ruling for which the state had not specifically advocated), noting that "there was some testimony as to the scrutinizing of a map and a newspaper that suggests the officer possibly exceeded the permissible scope of the noninvestigatory inventory." *Id*. at 12.

As noted, on the same day that *Atkinson* was decided, we issued our opinion in *Perry*. In that case, police responded to a call concerning an intoxicated person at a bus station. 298 Or at 24. The defendant was staggering,

falling, and unable to speak clearly, and the officer could smell alcohol. When the officer took the defendant into custody on a civil detox hold, the defendant had two suitcases with him, which the officer placed in the trunk of the patrol car. *Id.* After they reached the station, the defendant was taken inside for booking. The officer returned to the car to retrieve the suitcases and brought them into the booking room. He opened the suitcases to perform an "inventory search" and, in one of the suitcases, found "a clear plastic sack containing a green, leafy substance which the officer believed to be marijuana." *Id.* The officer seized the bag and its contents and arrested the defendant.

At trial, the officer testified that he had searched the bag to look for valuables and that Roseburg City Police policy required valuable property to be removed, placed in a large envelope, and locked in a safe. *Id.* This court noted that the state had offered an additional rationale for inventory search, namely:

> "An incoming prisoner who has already been searched could simply hide items taken from defendant's luggage on his person and thus introduce those items into the jail. An individual who has not been searched could take items from defendant's luggage, hide them on his person, and have the police inventory them as his own property and thereby insure the security of those items, not for the rightful owner, but for the thief. Finally, an incoming prisoner could hide weapons or contraband he had on his person in defendant's luggage."

*Perry*, 298 Or at 25 n 3. We rejected each of those justifications for the inventory search and held that the officer's search of the opaque, closed suitcases was unlawful, citing both *Keller* and *Newman* and noting that, in *Newman*, "[w]e in effect held that the conduct of police in dealing with persons in noncriminal and nonemergency situations is to be tested by 'reasonableness.'" *Id.* at 26.

We also agreed with the Court of Appeals' reasoning in *State v. Lawrence*, 58 Or App 423, 648 P2d 1332 (1982), which presented the same issue that was before this court in *Perry* and in the instant case, namely "'* * * whether the police may, without a warrant, in a noncriminal,

non-emergency situation open a closed container seized from the intoxicated person at the time he is booked in at the holding facility.'" *Perry*, 298 Or at 26 (quoting *Lawrence*, 58 Or App at 425-26). We observed that, in *Lawrence*, the defendant was transported to the county jail for detoxification because the local treatment facility was full. During the booking process at the jail, the defendant was subjected to an inventory search of his person according to the jail's customary criminal booking procedures. *Id.* at 27. That search revealed two white plastic drinking straws whose ends had been taped shut. An officer opened the straws, revealing narcotics, and he arrested the defendant for possession of controlled substances. *Id.* The trial court denied the defendant's motion to suppress, and the defendant was convicted of the charged offense. The defendant appealed, and the Court of Appeals reversed. *Id.*

On review, this court quoted with approval the following passage from the Court of Appeals' opinion:

> "'Given the fact that the purpose of ORS 426.460 is to protect intoxicated persons by keeping them in custody for a limited period (48 hours), rather than treating them as criminals, it would be anomalous to treat them the same as one in full custody arrest for a criminal offense. What is reasonable in the latter case may not be in the former. * * * It is * * * reasonable for the booking officer to inventory [see ORS 133.455] the property of the intoxicated person when he will be held in jail, even though not booked for a crime, in order to protect his property and to maintain the security of the detention facility.

> "'However, the inventory process in noncriminal, nonemergency cases should be less intrusive than that considered reasonable in criminal cases. Once a closed container is taken from the person during inventory of his property and is in the exclusive control of the police, it is unreasonable to open the container and seize its contents without a warrant unless the contents are in plain view and are identified as contraband without the necessity of laboratory analysis.'"

*Perry*, 298 Or at 27 (quoting *Lawrence*, 58 Or App at 430-31 (brackets in *Perry*)).

This court endorsed both the reasoning and the result in *Lawrence* as consistent with *Atkinson*, *Newman*, and *Keller*. *Perry*, 298 Or at 27. The court ultimately held that the inventory search of the defendant's suitcases was unconstitutional, explaining its own reasoning as follows:

> "First, assume the defendant in this case was arrested for driving with a suspended operator's license a 1929 Stutz Bearcat and sitting on the seat beside him were all of his worldly possessions contained in two fishing tackle boxes—one large and one small, but both secured by red ribbons. Defendant, car, and tackle boxes were taken to the police station. Then, change the facts and assume that the same defendant was taken into custody on a civil hold for being intoxicated as a passenger in the same vehicle and the officers take him and his two fishing tackle boxes to the jail.

> Under both assumptions, an inventory could be carried out under the same administrative procedure. In the situation where the defendant was arrested for driving with a suspended operator's license, an alleged criminal act has triggered the impoundment and inventory of his property. Under *State v. Keller*, *** the police could not open and inventory the contents of the containers. However, the State now argues that when the defendant ends up in jail as a result of his intoxication or his being under the influence of a controlled substance, which is not a criminal act, that the booking officer may open and inventory closed containers as a part of the jail's administrative procedure. We fail to see a distinction in the two situations which would persuade us to overrule *State v. Keller*[.]"

*Id*. at 27-28.

    5.  State v. Okeke

After *Perry*, the court decided *State v. Okeke*, 304 Or 367, 745 P2d 418 (1987), where we considered the inventory of closed, opaque containers in the civil detox setting when the search is performed by private facility personnel and not the police themselves. In *Okeke*, the intoxicated defendant was taken to the Hooper Memorial Center for Alcoholism Intervention (Hooper), a private detoxification facility operated under contract with Multnomah County to serve as a holding center for people taken into police custody. 304 Or at 369. As part of its intake procedures, Hooper searched the

defendant's purse and found a gun. The state charged the defendant with possession of a concealed weapon. *Id.* Before trial, the defendant moved to suppress the evidence of the gun. The trial court denied the motion, and the defendant was convicted of the charged offense. *Id.* at 370. On appeal, the Court of Appeals reversed, holding that the same constitutional restraints on warrantless searches and seizures that apply to an inventory search conducted by police at a jail apply with equal force to a search conducted by the private employees of a private facility. *State v. Okeke*, 82 Or App 393, 398-99, 728 P2d 872 (1986).

We allowed the state's petition for review. On review, the state advanced two arguments. First, and primarily, the state argued that Hooper was not a state actor, and, therefore, the firearm was not subject to suppression.[5] Second, the state argued that, even if Hooper's actions were the equivalent of state action, the search was reasonable under Article I, section 9.

Turning to the question of reasonableness, we reiterated our holdings in *Newman* and *Perry*, and, as in *Perry*, we emphasized that the statutory authority that permitted a person to be taken into custody is critical to that assessment. We specifically discussed that the underlying source of authority for the seizure, and ultimate search, flowed from ORS 426.460, and we noted:

> "ORS 426.460 was first enacted in 1971 when the Legislative Assembly decided to end the longstanding practice of dealing with public drunkenness as a criminal offense, and to treat it instead as a health problem. A central aim of this legislative reform was to repeal penal laws against public intoxication and to redirect police responsibility toward taking intoxicated persons to their homes or other safe shelter rather than jailing the person in a police 'drunk

---

[5] We held that Hooper was a state actor in this situation. In reaching that conclusion, we reviewed the purpose of the civil detoxification statute, noting that the statute necessitated the creation of detoxification facilities and that those facilities "must admit the [intoxicated] person and, the statute implies, may detain her for hours." *Okeke*, 304 Or at 371. We explained that the application of constitutional standards to a warrantless seizure and search could not be doubted if a city or county maintained the treatment facility, and the state could not escape those constitutional requirements merely because the facility is managed by a private contracting agency. *Id.*

tank.' Of course, this change necessitated the provision of such shelters for intoxicated persons who cannot be taken home."

*Okeke*, 304 Or at 370-71.

We observed that seizure and search in this context "does not deal with evidence found in a search upon individualized probable cause. It deals with the prosecutorial use of evidence seized in a routinized, unconsented search of the belongings of a person who has been detained by public officers not on suspicion of criminal conduct but ostensibly for the person's own good." *Id*. at 373. Thus, we reasoned, *Newman* and *Perry* compelled the conclusion that, where, as part of an inventory search of an individual brought into custody pursuant to a civil detox hold, the search of an opaque closed container revealed potential evidence, "evidence so obtained may not be used to prosecute the intoxicated person." *Id*. at 374.

### 6. State v. Lippert

Finally, we consider our decision *State v. Lippert*, 317 Or 397, 856 P2d 634 (1993). In *Lippert*, police took the defendant into custody pursuant to a civil detox hold and then inventoried his possessions upon his entry into the jail (the locale did not have a separate treatment facility). We noted that the inventory search "was the kind of properly authorized, routinized, noninvestigatory process that this court held to be constitutionally permissible in *State v. Atkinson*." *Id*. at 399 n 2. As the court stated, "[f]rom [the] defendant's right front pocket, the jailer removed a paperfold measuring approximately one and one-half inches by three-quarters of an inch, with its corners 'turned in, and \*\*\* folded underneath.'" *Id*. at 399 (omission in *Lippert*). A police officer who had assisted the jailer later testified that, in his training and experience, the paperfold was common packaging for a particular type of narcotic. *Id*. at 400. The officer opened the paperfold, revealing controlled substances, and defendant was charged with possession of a controlled substance. *Id*. The defendant moved to suppress the evidence of the paperfold, and the trial court granted the motion. The state appealed the suppression order.

On appeal, the Court of Appeals affirmed. *Lippert*, 317 Or at 400. Relying on our decisions in *Newman*, *Perry* and *Okeke*, the court held that the opening of the paperfold was an unconstitutional search. The state petitioned for review, arguing that this case was distinguishable because "the paperfold 'announced' its contents by its distinctive configuration and was effectively in plain view." Petition for Review of The State of Oregon at 1, *State v. Lippert*, 317 Or 397, 856 P2d 634 (1993) (SC S39473). The state further contended that, because the paperfold announced its contents, it was not a closed container. Therefore, the state argued, the police had not searched a closed container, and the *Okeke/Perry/ Newman* line of cases did not prevent the use of the drug evidence in the defendant's criminal prosecution. *Id.* at 2.

On review in *Lippert*, we surveyed our inventory search jurisprudence in the context of civil detox holds, in much the same way as we consider that jurisprudence here. We ultimately agreed with the state that, because the paperfold announced its contents, the contents were "in plain view," and, accordingly, suppression of the evidence was not required. 317 Or at 405. However, in explaining that disposition, we reiterated that our long established line of cases—beginning with *Newman* and continuing through *Perry* and *Okeke*—hold "that Article I, section 9, of the Oregon Constitution is violated when officers conduct a search of closed, opaque containers (purses and suitcases) that do not announce their contents and that are not going to be placed with the intoxicated person into the secured portion of the detoxification facility." *Lippert*, 317 Or at 404.

Having now surveyed our inventory search decisions, with an emphasis on those decisions arising in the context of civil detoxification, we turn to the arguments in this case and the Court of Appeals' decision.

B.  *Application*

The state argues that the search in this case was conducted pursuant to a lawfully enacted inventory policy—a point that no one disputes. Additionally, the state argues that the officer followed the dictates of that policy, which requires police to "remove and inventory the contents

of closed containers if the closed container is designed for or likely to contain valuables or money including but not limited to \*\*\* closed backpacks." WCCO 9.12.040(C)(3). And, again, no one disputes that the officer here acted within the terms of the policy. For the state, those facts resolve the matter. The state argues that "[t]he courts' role, under *Atkinson*, is to ensure that the subject policies and procedures serve the permissible purposes of an inventory." It follows, the state argues, that "this court should review an inventory policy only to determine whether it rationally serves [stated policy] goals, and whether it does so through standards that are systematic in both design and administration."

We disagree with that characterization of both *Atkinson* and this court's role in assessing such a policy. The state's argument tracks the United States Supreme Court's Fourth Amendment analysis in *Opperman*, which held that "inventories pursuant to standard police procedures are reasonable." *Opperman*, 428 US at 372. However, as previously chronicled, this court's Article I, section 9, jurisprudence has diverged from Fourth Amendment analysis, beginning with *Keller*, which adopted reasoning for Article I, section 9, that had been expressly rejected by *Opperman* for purposes of the Fourth Amendment.

This distinction was later reinforced in *Atkinson*, where we noted that an inventory conducted pursuant to a lawfully promulgated inventory policy was not "inherently 'unreasonable' within the meaning of Article I, section 9." *Atkinson*, 298 Or at 8. That phrasing is critical. We said that such an inventory was not inherently unreasonable, not that it was inherently reasonable. We have never said that the presence of an inventory policy renders any search conducted pursuant to the policy reasonable—which is the *Opperman* approach. On the contrary, our line of cases addressing civil detoxification—*Newman*, *Perry*, *Okeke*, and *Lippert*—shows that compliance with an inventory policy alone does not render a search of opaque, closed containers, at least in the civil detox setting, inherently reasonable.

We also observe that, in non-detoxification contexts, we have rejected the state's reading of *Atkinson*. In *Nelson*

*v. Lane County*, we explained that *Atkinson's* disposition—a reversal and remand—

> "was done to enable the state to present whatever evidence existed that the impoundment was authorized by responsible policymakers and that the 'noninvestigatory' inventory search was conducted pursuant to a properly authorized and administered program. We declined to reach the question whether the search *otherwise violated Article I, section 9*, without first determining whether the activity was authorized by law and carried out pursuant to regulation."

304 Or 97, 102, 743 P2d 692 (1987) (emphasis added). More recently, in *State v. Fulmer*, 366 Or 224, 231, 460 P3d 486 (2020), we stated that the court in *Atkinson* "did not hold that compliance with [the *Atkinson*] requirements would mean that a search conducted pursuant to a valid inventory policy always would be constitutional."

         Before us, the state argues that, in *State v. Connally*, 339 Or 583, 587-88, 125 P3d 1254 (2005), we categorically permitted the opening of closed and opaque containers in all contexts. Our review of our decisions in this area does not support a categorical approach. In *Connally*, officers arrested the defendant and, at the time of the arrest, searched his vehicle, claiming authority under both the automobile exception to the Article I, section 9, warrant requirement and the Portland City Code. As we described,

> "[Officer] Larson patted defendant down, found approximately $1,200 in cash on him, and put him in the back of the patrol car. [Officer] Larson also impounded the car because defendant's driver license had been suspended. By that time, another officer had arrived and Larson asked him to inventory the car's contents. That officer found eight bottles of pseudoephedrine in an open paper bag, two cell phones, and a police scanner. He then felt a hard object inside a ski locker (a nylon bag for holding skis) placed between the back seats. Inside the ski locker, he found a fanny pack. He opened the fanny pack and discovered small baggies of what appeared to be methamphetamine, other unused baggies, syringes, and papers with defendant's name on them."

*Connally*, 339 Or at 585-86.

The state points to a specific line in our opinion in *Connally* where we said, "The police may inventory the contents of containers when doing so is necessary to serve the inventory's purposes." 338 Or at 587. The state reads that sentence as categorically approving the opening of closed containers any time an inventory policy permits it. In our view, the state overreads *Connally*. For one thing, *Connally* involved a criminal arrest, so it says nothing about searches in the civil detox hold context. More importantly, as we explained in *Fulmer*, *Connally* was merely stating that "'[t]he purpose of the inventory is not to discover evidence of a crime,' but rather to serve civil and administrative ends. The [*Connally*] court emphasized that the scope of the inventory depends on what 'is necessary to serve the inventory's purposes.'" *Fulmer*, 366 Or at 233 (quoting *Connally*, 339 Or at 587 (citations omitted)). We agree with the *Fulmer* court's reading of *Connally*. Purpose is *one* consideration in determining the constitutionally reasonable scope of an inventory; but we have never said that the policy's purpose is the *only* consideration in the evaluation of reasonableness.

## III.   CONCLUSION

Our review of our caselaw shows that inventory searches are not subject to lesser judicial review than other forms of seizure or search. For example, warrantless searches are *per se* unreasonable under Article I, section 9, unless they fall within one of the few specifically established and limited exceptions to the warrant requirement. *State v. Bliss*, 363 Or 426, 430, 423 P3d 53 (2018). But even warranted searches are subject to judicial review for reasonableness—if the issuing magistrate erred in assessing probable cause, for instance, or if the search conducted exceeded the scope of the warrant, the subsequent warranted search will be held to be unreasonable and in violation of Article I, section 9. *State v. Castilleja*, 345 Or 255, 264, 192 P3d 1283, *adh'd to on recons*, 345 Or 473, 198 P3d 937 (2008).

Similarly, in the administrative context, an inventory search is *per se* unreasonable if it is not premised on authority conferred by statute or ordinance and conducted pursuant to a lawfully promulgated inventory policy that affords the executing officer no discretion—the *Atkinson*

requirements. Thus, the existence of authority by statute or ordinance and a promulgated policy that provides for no discretion are prerequisites to the invocation of the inventory exception, but they are not dispositive on the issue of whether the inventory search was reasonable in scope, or otherwise complies with Article I, section 9. That is because the policy itself may still offend the Oregon Constitution. In determining whether an inventory policy exceeded the permissible bounds of Article I, section 9, we look to the totality of the circumstances, which can include, but are not limited to, the purposes of the policy, the source of authority for why the individual, or the object, came into police custody, and the privacy rights implicated.

In *Newman*, *Perry*, *Okeke*, and *Lippert* we considered the context of civil detoxification, where a person is not being detained based on probable cause that the person has committed a crime, but rather for their own health wellbeing. We considered the purposes and authority granted under the civil detoxification statute, evaluated those against the arguments for preventing loss and limiting liability, and, considering the privacy rights implicated, concluded under a totality of circumstances that, whatever the specific inventory policy may permit, opening closed and opaque containers that do not announce their contents, regardless of whether they may hold valuables, exceeds the scope of what is reasonable under Article I, section 9. We see no reason to depart from that well-established line of reasoning in this case.[6]

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

---

[6] The Court of Appeals upheld the opening of defendant's backpack based on its "line of decisions *** that has adopted the position that, although ordinarily it is not permissible to open closed, opaque containers, an *exception* applies when such containers typically contain valuables." *Wilcox III*, 335 Or App at 754 (emphasis added). In short, the Court of Appeals reasoning in *Wilcox III*, derived from its decision *Salkoski*, is that the reasonable scope of a constitutional inventory search will always include opening closed and opaque containers if those containers could contain valuables. However, as our cases demonstrate, no such categorical "exception" exists.